DEEMER, C. J., EVANS and PRESTON, JJ., concur.

---

WANDA EVANS, Appellee, v. J. G. ROBERTS, Appellant.

PHYSICIANS AND SURGEONS: Negligence—Sufficiency of evidence—Abnormal Injury. A showing that, during a successful surgical operation on one member of the body, the patient suffered an abnormal and unnecessary injury to another member of his body, separate and distinct from the one operated on, together with any further proof of facts having *any* fair tendency to sustain the charge of negligence, will be sufficient to carry the question to the jury. So held where the showing was (a) that the surgeon, in removing the adenoids of a child, cut off a portion of the tongue; (b) that the instrument, which the surgeon himself placed in the child's mouth, "slipped"; and (c) that the surgeon pulled the instrument from the child's mouth with a "violent jerk".

PHYSICIANS AND SURGEONS: Negligence—Abnormal Injury—Expert Evidence. Whether a surgeon was negligent in cutting off a portion of the tongue of a child while removing the adenoids is not a matter that must be established by expert testimony only.

APPEAL AND ERROR: Right to Allege Error—Invited Error. One who leads the court into instructing the jury as to its duty in determining a certain matter in issue will not thereafter be heard to say that there was no evidence which justified the submission of such issue.

APPEAL AND ERROR: Harmless Error—Exclusion of Evidence. The exclusion, on cross-examination, of evidence, apparently of no great weight, which the complaining party could well have secured by making the non-hostile witness his own, will be passed over as harmless.

EVIDENCE: Opinion Evidence—Examination of Experts—Form of Question. A hypothetical question to an expert may properly embrace an alleged fact, concerning the existence of which the proof is weak.

**TRIAL: Reception of Evidence—Objections—When Not Timely.** Objections to questions calling for a description of the *uses* of certain demonstrative instruments, having reference to a material issue in the case, are too late when made *after* the objector had consented to their production by the witness.

**EVIDENCE: Demonstrative Evidence—Articles Relating to Controversy.** An object cognizable by the senses, and having such relation to the facts in dispute as to be of material aid to the jury in determining the very truth of the issues, is both competent and material. So held in case of the reception in evidence of surgical instruments in a negligence case.

**TRIAL: Instructions—Statement of Issues—Inconsistency.** Where no complaint was made as to the treatment employed by a surgeon *in removing the adenoids* of a child, but the complaint was that, in performing such operation, he negligently and unnecessarily injured the tongue of the patient, it was no misstatement of the issues, nor was there inconsistency, in instructing (a) that one of the issues was whether defendant was negligent in performing the operation and (b) that there was no evidence of negligence in respect to the anaesthetic used, or in its administration, or that the instruments used were improper.

**TRIAL: Instructions—Inconsistency—License to Jury to Consider Withdrawn Matters.** Where the sole complaint was that, in performing successfully one operation, the defendant surgeon negligently injured the patient's tongue, there was no inconsistency (a) in withdrawing charges of negligence in the use of the anaesthetic and in the selection of proper instruments, and (b) in instructing that, in addition to the injury to the tongue, it must be found that defendant was negligent in what he did and that, in so determining, the jury might consider "what was done at the time of the operation".

**TRIAL: Argument of Counsel—Curing Error.** Objectionable arguments, rebuked and discredited by the court and withdrawn by the offending counsel, are usually listed as harmless.

**TRIAL: Verdicts—Excessiveness—Injury from Surgical Operation—$1,100.** A verdict for $1,100 against a surgeon for negligently cutting off a small piece of a child's tongue, while removing the child's adenoids, is declared excessive, and option given to accept $750 or new trial.

*Appeal from Mahaska District Court.*—HON. K. E. WILL-COCKSON, Judge.

FRIDAY, NOVEMBER 26, 1915.

ACTION at law to recover damages. Verdict for plaintiff, and defendant appeals. The material facts are stated in the opinion.—*Affirmed on condition.*

*Wade, Dutcher & Davis* and *Burrell & Dewitt,* for appellant.

*S. V. Reynolds* and *McCoy & McCoy,* for appellee.

WEAVER, J.—The defendant is a practicing physician and surgeon at Oskaloosa, Iowa, and plaintiff, a child of seven years, resides with her parents in the neighboring town of New Sharon. In November, 1910, plaintiff's parents brought her to defendant's office for treatment. Defendant's diagnosis was to the effect that plaintiff was afflicted with adenoids, the removal of which was necessary to her proper recovery. This operation the defendant undertook to perform, and in so doing, it is alleged that he cut off a portion of the child's tongue, and this action is brought to recover damages. Plaintiff charges: (a) that defendant performed the operation negligently and unskillfully, in that he failed (1) to use or administer a proper anaesthetic to the patient or employ a proper person to administer the same, and (2), to use the proper instruments and appliances; and (b) that his diagnosis was careless and inefficient; and (c) that, in performing the operation, he carelessly used an instrument known as a "gag", whereby he cut off and removed a portion of plaintiff's tongue. It is also charged in various forms of expression that defendant did not follow the established practice or conform to the standards of his profession, and in general that his operation upon and treatment of the child were negligent and unskillful. It is alleged that one third of plaintiff's tongue was cut off and that, as a result thereof, she has lost in part the use of her tongue, and her power of speech is permanently impaired. The answer admits that defendant

treated the plaintiff, but denies all other allegations of the petition. The issues were tried to a jury, which returned a verdict for plaintiff for $1,100. Motion for new trial was denied, and judgment was entered on the verdict.

In submitting the case to the jury, the court withdrew from its consideration the plaintiff's charge of negligence with reference to the administration of an anaesthetic to the patient, as well as the further charge that defendant was negligent in the selection or choice of the instruments employed by him in the operation. Stating the issues to be considered by the jury, the court further limited the charges of negligence to the following: (1) That in performing the operation, the defendant did not use ordinary care and skill; and (2) that, by reason of such failure to operate with such care and skill, the plaintiff suffered injury without contributory negligence on her part.

The evidence offered by plaintiff tended to show that the abnormal growth known as adenoids is found in the upper part of the throat back of the palate, and their removal in ordinary practice does not necessitate any cutting of the tongue, and that the instruments ordinarily made use of in such operations are one known as a gag, which is inserted between the patient's jaws to hold the mouth open, and another known as a curette, a cutting instrument which is inserted through the mouth and over the adenoids in position to operate the blade, or cutting edge. The evidence further tends to show that defendant said to the child's father that the operation would not take over a minute; that the father then, under his direction, took the child on his lap, holding her hands, and with her head upon his breast. In that position, the gag was placed in her mouth, an anaesthetic was administered, and defendant proceeded to remove the adenoids with the curette. The father describes the operation as being done very quickly; and the doctor had hardly placed the instrument in the child's mouth before he "jerked it" away, the movement being followed by the scream of the child and the

spurting of blood. He further says that the child did not move or struggle during the operation. It does not appear whether, in the same movement which withdrew the curette, defendant also pulled away the gag; but it was immediately discovered that the child's tongue had been cut. Defendant saw the condition, said he had cut her tongue, and said it had been caused by the slipping of the gag. The father also testified that a portion of the skin was torn from the child's mouth, several of her teeth loosened and the side of her mouth bruised. He says he thought that a third of the tongue was taken off, but this is undoubtedly an exaggeration. The family physician, who thereafter attended her, describes it as a small piece beginning near the point of the tongue and extending a half or three-quarters of an inch around on the left side or edge of that organ. The wound bled freely, the child cried much, was unable to eat anything for two or three days, and evidently suffered much. The operation was on November 25th, and some time within a few weeks, she had so far recovered as to resume her place in school for a short period, and, on the following Christmas, she declaimed or recited at school and at a church gathering. It is also shown that there are a few words, especially those beginning with *t* or *th*, which she is unable to speak as clearly or plainly as she could before the injury, and the tongue itself is slightly shortened and scarred. A physician testified as an expert that the muscle at the place of the wound is contracted, with the result that "when the child attempts to put her tongue down, it pulls aside by reason of the scar tissue. The tongue does not have the freedom to turn in the opposite direction as it does this way." He further expressed the opinion that the deformity of the tongue is permanent. Surgeons, experienced in operations of this kind, also testified that, if the child operated upon is held securely and does not move or struggle, the work, properly performed, would not result in wounding the tongue; but that if the child moved at the critical moment or lifted the tongue, an accident of this nature might occur.

There is also evidence tending to show that in such operation the child's tongue should be held down. The defendant offered no evidence in his own behalf and, his motion for a directed verdict in his favor having been overruled, the cause was submitted to the jury upon the evidence for the plaintiff. The jury returned a verdict in plaintiff's favor for the sum of $1,100.

I. It is the appellant's contention that there is no evidence in the record to support a finding that he was negligent. With this, we are unable to agree. Assuming, for the purposes of this case, the soundness of the

1. PHYSICIANS AND SURGEONS: negligence: sufficiency of evidence: abnormal injury.

argument that, in performing an operation, a surgeon is not held to guarantee results, and that, if he possesses the measure of skill which the law requires, a mere failure of judgment in his choice of methods and means is not actionable negligence, such concession is insufficient for the disposition of the issue of negligence in this case as a matter of law. This is not the ordinary case where a practitioner is sought to be charged with liability for alleged improper treatment of some bodily ailment or infirmity. He was employed to remove the adenoids from the plaintiff's throat, and there is neither claim nor proof that he did not successfully remove them. His negligence, if any, was in failing to take due care to avoid injury to the undiseased parts in the vicinity of which the operation was performed; and while it may be true that, had the operation upon the adenoids been unsuccessful and disappointing, no inference of negligence or want of skill would arise therefrom, it does not follow that this rule applies with the same force to an injury done by him to sound and undiseased parts of the plaintiff's person which he was not called upon to treat and did not pretend to treat. If a surgeon, undertaking to remove a tumor from a person's scalp, lets his knife slip and cuts off his patient's ear, or, if he undertakes to stitch a wound on the patient's cheek, and, by an awkward move, thrusts his needle into the patient's eye, or, if a dentist, in his haste,

leaves a decayed tooth in the jaw of his patient and removes one which is perfectly sound and serviceable, the charitable presumptions which ordinarily protect the practitioner against legal blame where his treatment is unsuccessful, are not here available. It is a matter of common knowledge and observation that such things do not ordinarily attend the service of one possessing ordinary skill and experience in the delicate work of surgery. It does not need scientific knowledge or training to understand that, ordinarily speaking, such results are unnecessary and are not to be anticipated, if reasonable care be exercised by the operator. When they do happen, then proof of other facts and circumstances having any fair tendency to sustain the charge of negligence will be sufficient to take the question to the jury, and this may be true even though, if the alleged negligence pertained solely to the treatment of the diseased parts, the court might be inclined to dispose of it as a matter of law. In the case of *Evans v. Munro,* (R. I.) 83 Atl. 82, it was proved that a surgeon performing an operation placed a foreign substance in the wound to serve as a drain, which he afterwards failed to remove, and the patient suffered injury therefrom; and it was held that proof of this fact alone imposed upon him the burden of explaining his failure in a manner consistent with due care on his part. A similar rule is laid down in *Davis v. Kerr,* (Pa.) 86 Atl. 1007, and in *Adams v. Hospital,* (Mo.) 99 S. W. 453. That there is evidence of negligence, in addition to the fact of the injury, can hardly be questioned. Defendant did not see fit to testify in the case; hence the trial court and jury and this court are without the assistance which might possibly have been furnished by his explanation of the matter. We have, however, his statement at the time that the "gag slipped"; but as he himself furnished the instrument and himself placed it in the child's mouth, the jury, in the absence of other explanation, might naturally and properly infer that defendant failed to properly fit and adjust it for its intended purpose. Again, if we are to believe the father of the child—and his

credibility was for the jury—defendant pulled the instrument from the child's mouth with a more or less sudden and violent jerk, which was scarcely consistent with care to avoid injury of this kind to his patient; and that the effect of such violence was seen not only in the wounded tongue, but in the bruised and lacerated mouth, as well. This, we think, was ample to take the question of negligence to the jury.

If we understand counsel correctly, it is their contention that negligence in cases of this nature can be established only upon the testimony of competent experts. What may be the rule where the sole question is upon the treatment of the diseased part and whether it was in accordance with approved and medical standards, we need not here decide; for, as we have already noted, this is nqt a case of that kind. The jury here did not have to consider whether the method of the defendant in removing the adenoids was correct or scientific, but whether the unintentional wounding of plaintiff's tongue was occasioned by lack of reasonable care on his part. This, it would seem very clear, involves no question of science or necessarily of expert knowledge. Referring to a similar argument in a malpractice case, the supreme court of Washington has said:

2. PHYSICIANS AND SURGEONS: negligence: abnormal injury: expert evidence.

"It is argued on behalf of the respondent (1) That whether a surgical operation was unskillfully performed is a question of science, and is to be determined by the opinion evidence of surgeons; and (2) in effect that a bad result standing alone is no evidence of unskillful surgery. From these postulates, it is argued that there is no evidence to sustain the verdict. Both propositions are sound when soundly applied. The reason is that in most cases a layman can have no knowledge whether the proper medicine was administered or the proper surgical treatment was given. Whether a surgical operation was unskillfully or skillfully performed is a scientific question. If, however, a surgeon should lose the in-

strument with which he operates in the incision which he makes in his patient, it would seem as a matter of common sense that scientific opinion could throw little light on the subject." *Wharton v. Warner,* 135 Pac. 235, 237.

So, too, we might add, by way of further illustration, that, if a physician undertakes to administer a medicinal poison, like strychnine or arsenic or morphine, and by mistake gives the patient an admittedly fatal overdose, it would be a startlingly illogical proposition to hold that the question whether he exercised due care is to be determined by expert evidence alone. Nor is it any answer to say that the most eminent and most skilled practitioners are human, and that at times the most careful among them make mistakes. See *Reynolds v. Smith,* 148 Iowa 264, 271, where we said upon the subject, "The most proficient are subject to the infirmities of human nature, and as the books demonstrate, sometimes may lapse below the standard by which their conduct is to be measured." In the same case, we held that the jury was not necessarily bound by the expert testimony, but could take into consideration the proved facts and circumstances attending the operation. Neither, in the present case, is it sufficient to say that the child, by some sudden and unlooked for movement or struggle, must have caused the unexpected and unintended contact of her tongue with the instrument, notwithstanding the exercise of due care by the defendant. Her father swears that she did not move until the act was done, and defendant, the only other person who could speak to the fact, declines to do so. That upon the whole record the issue of negligence was for the jury, we cannot doubt.

It may also well be added, in disposing of this branch of the case, that the defendant asked several instructions directing the jury as to its duty in considering and passing upon the issue of negligence, some of which requests the court in substance approved and embodied in its charge; and under our repeated holdings, it is not now open to appellant to urge in this court

3. APPEAL AND ERROR: right to allege error: invited error.

that there was no evidence to justify the submission of that issue. See *Gordon v. Chicago, R. I. & P. R. Co.*, 154 Iowa 449, 451, and cases there cited.

II. Doctor Phillips, the plaintiff's family physician, having testified to the condition of plaintiff's tongue after the operation, said, on cross-examination, that he talked with her and could readily understand what she said.

**4. APPEAL AND ERROR: harmless error: exclusion of evidence.**

He was then asked if he noticed any difficulty of any kind in her speech, and to this question the court sustained an objection that it was not proper cross-examination. Upon this ruling, error is assigned. It is probable that the ruling was unduly technical and the answer might well have been allowed, but we see in it nothing which was necessarily prejudicial. The witness disclosed no bias or hostility towards the defendant, and had already said that he could readily understand the child's speech; and if defendant thought his further answer as to whether he noticed any peculiar difficulty therein was of material importance, he could have readily made him his own witness for the purpose.

III. Error is further alleged upon the ground that, in framing a hypothetical question to plaintiff's expert witness, it was assumed, among other things, that the patient "made no struggle or resistance to the operation",

**5. EVIDENCE: opinion evidence: examination of experts: form of question.**

when there was in fact no evidence on which to base such assumption. The record does not sustain the exception here taken. The father does testify that he held the child upon his lap and against his breast and that she did not struggle, but it is argued that he was not so situated that he could see or tell whether she moved or lifted her tongue. This proposition was doubtless a legitimate argument to be pressed upon the attention of the jury as bearing upon the weight of the father's evidence, but we think the record sufficient to justify the form of the interrogatory.

IV. Dr. Windle, a specialist in this class of cases, testified for the plaintiff, describing the methods and instruments ordi-

narily employed in the removal of adenoids from the throat
of a child.  He produced and put in evidence
a gag and a curette, as specimens of the in-
struments so used, and ·described to the jury
the manner of their use; but said that other
patterns and kinds of gags and curettes were in approved use
by operating physicians.  Of the introduction of this evidence,
complaint is made, but we think that defendant is not in posi-
tion to press the objection here.  When the witness came
upon the stand, plaintiff's counsel asked him to produce the
instruments made use of by him in such operations, and to
this, counsel for the defense responded, "We have no ob-
jection."  The instruments being produced, the witness was
asked at considerable length concerning the manner of their
use; and while the questions, or most of them, were objected
to as "incompetent and immaterial", no objection to the
instruments themselves was raised until, at the close of the
witness' testimony, they were formally offered in evidence, at
which time the offer was objected to as "incompetent, ir-
relevant and immaterial".  Later, by agreement of the parties,
the instruments were not taken by the jury to its room.

6. TRIAL: recep-
tion of evi-
dence: objec-
tions: when
not timely.

When counsel consented to the production of the instru-
ments before the jury, we think that it was too late to object
to a description of their proper use, even if such objection
might otherwise have been well taken.  But,
assuming the objection to have been made in
due time, we think that the evidence was both
competent and material.  The defendant did
not produce the implements which he employed, and the only
other witness testifying of the operation was a layman, who
could give no very accurate account of it.  The production and
use in evidence of instruments of that character usually em-
ployed by competent surgeons must have been of material aid
to the jury in comprehending the nature of the operation
and the force and effect of the testimony relating thereto.
The trial court did not err in this respect.

7. EVIDENCE:
demonstrative
evidence: ar-
ticles relating
to controversy.

V. Exception is also taken to several instructions given the jury. It is first said in this regard that the court erred in stating that one of the issues before the jury was whether de-

**8. TRIAL: in-structions: statement of issues: in-consistency.**

fendant was negligent in performing the operation, and this objection is based upon the proposition that there was no evidence as to what the means and methods employed by the defendant were; and further, that the court, in another instruction, told the jury that there was no evidence that the defendant was negligent with respect to the anaesthetic used or in its administration, or that defendant had made use of any improper instrument. As we have said before, no complaint is made, as the record stands, with respect to the treatment given the adenoids, which was the service for which the defendant was employed; but that, in performing such operation, he failed to exercise proper care to avoid other and unnecessary injury to other parts of plaintiff's person. There is, therefore, no inconsistency between the two instructions mentioned, nor is there any misstatement of the issues presented.

It is also argued that a radical inconsistency appears between Instruction No. 7, withdrawing from the jury the charge of negligence in the use of the anaesthetic and in the

**9. TRIAL: instruc-tions: incon-sistency: li-cense to jury to consider withdrawn matters.**

selection of proper instruments, as already noted, and Instruction No. 9, in which the jury was told that the mere fact that plaintiff's tongue was injured in the operation was not, in itself, sufficient to establish the charge of negligence; and that, to justify a recovery, it must further be found that defendant had failed to exercise the proper degree of care in what he did; and that, in determining whether proper care was exercised, the jury was at liberty to "take into consideration the nature of the injury to plaintiff's tongue and what was done at the time of the operation, all as shown by the evidence, facts and circumstances of the case, and thus seek to arrive at the very truth of the matter".

Counsel say that the effect of the language just quoted is to allow the jury to consider and make use of the very testimony which the first mentioned instruction expressly withdrew and told them not to consider. We do not so understand the language of the court's charge, and it is only by a very forced construction that it is possible to find such meaning therein. Even when the issue relating to the choice of anaesthetics and the choice of instruments and all the evidence, if any, relating thereto have been wholly eliminated from the record, there still remains evidence of "the injury to plaintiff's tongue and of what was done at the time of the operation" and of other "facts and circumstances in the case"; and it is these things, and these alone, which remain in the record after giving effect to Instruction No. 7, that the jury are told in No. 9 they may consider in reaching their verdict.

VI. Again, it is argued that the jury failed to follow the instructions of the court by which they were warned that they were not to indulge in conjecture or speculation, and that a verdict could be returned for plaintiff only upon an affirmative finding from the evidence that defendant was negligent. This contention is but another form of the objection, which we have already discussed, that the evidence is insufficient to sustain a verdict against the defendant. We have considered that point sufficiently in the first paragraph of the opinion, and it is unnecessary to here repeat the views there expressed. The evidence was for the jury.

VII. It is charged that counsel for plaintiff made use of language in his closing argument tending to inflame the passions of the jurors and prevent a fair trial of the issues.

10. TRIAL: argument of counsel: curing error. The words imputed to counsel are to the effect that he did not know what kind of an instrument defendant had used in the operation upon plaintiff, but he thought that it must have been a butcher knife. Counsel for the defense at once interrupted the argument with an objection, which the court promptly sustained, and admonished the jury not to regard statements

in argument which went outside of the record. Counsel for plaintiff also, in the presence of the jury, withdrew the of-' fensive remark. The language complained of was objectionable; but in view of the immediate withdrawal of the statement and the ruling and admonition of the court, it is safe to assume that the error was cured, and that no prejudice resulted therefrom to the defendant.

VIII. Finally, the point is made that the verdict returned is excessive. After considerable deliberation, we are disposed to the view that the complaint is not without foundation. The injury, though a regrettable one, was not of a very serious character. The wound was soon healed. There is no personal disfigurement, unless the slight scar upon the tongue is to be so regarded. The only suggestion of permanent ill effect is a slight difficulty in vocalizing a single letter of the alphabet. Damages in such cases, where no element of wilfulness or recklessness is shown, ought to be strictly compensatory, and not punitive. Upon the whole record, we conclude that a judgment not to exceed $750 is sufficient to answer the ends of justice in this respect.

11. TRIAL: verdicts: excessiveness: injury from surgical operation; $1,100.

It is therefore ordered that if, within 30 days from the filing of this opinion, the plaintiff shall file with the clerk of this court her assent to the reduction of her recovery to the said sum of $750, the judgment below will be so modified and affirmed; otherwise, the cause will be remanded for a new trial. Costs will be taxed to the appellant.—*Affirmed on condition.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.