## VERGELDT v. HARTZELL et al.

(Circuit Court of Appeals, Eighth Circuit. July 25, 1924.)

No. 6535.

**1. Physicians and surgeons ⊚⟶18(9) — Negligence of dentist question for jury.**

When defendant, a dentist, was operating on plaintiff's teeth with an electric drill, the drill slipped, penetrating the floor of plaintiff's mouth, lacerating her tongue, and otherwise producing serious injury. In an action to recover for such injury, on the ground of negligence in permitting the drill to slip through inattention, where plaintiff testified that she made no conscious movement, *held*, that the question of negligence was for the jury.

**2. Physicians and surgeons ⊚⟶18(6)—Rule of res ipsa loquitur may apply, where no question of competency or skill is involved.**

Where, in action against a physician or surgeon, no question of diagnosis, method, or manner of treatment or operation, or of the competency or skill of defendant is involved, but the charge is that he was negligent and failed to observe reasonable care while performing an operation the rule of res ipsa loquitur is not excluded.

**3. Physicians and surgeons ⊚⟶18(8) — Rule making expert testimony essential to establish negligence held inapplicable.**

Where the question in issue in an action against a physician or surgeon is not one of skill in treatment or the performance of an operation, but of plain negligence and failure to use proper care, as to which a layman is as competent to judge as another physician or surgeon, it is not one which must be determined solely by the testimony of experts.

In Error to the District Court of the United States for the District of Minnesota; John F. McGee, Judge.

Action at law by Wilhelmina Vergeldt against Thomas B. Hartzell and another. Judgment for defendants, and plaintiff brings error. ' Reversed.

Victor E. Anderson, of Wheaton, Minn., and D. J. Leary, of Browns Valley, Minn. (Murphy & Anderson, of Wheaton, Minn., on the brief), for plaintiff in error.

Claude G. Krause, of Minneapolis, Minn. (J. O. P. Wheelwright, of Minneapolis, Minn., on the brief), for defendants in error.

Before KENYON, Circuit Judge, and AMIDON and SCOTT, District Judges.

SCOTT, District Judge. An action for personal injuries received by plaintiff, a patient of the defendants, practicing dentists, while one of defendants was polishing an inlay. Defendant's drill slipped, penetrating the floor of patient's mouth, lacerating her tongue, projecting itself downward and backward in the throat, producing a very serious injury. Plaintiff alleges five particular grounds of negligence: (1) Failure to prepare the mouth with a protective cotton roll; (2) operation of the disk at a dangerous rate of speed; (3) permitting foreign matter to enter the open wound, carrying infection; (4) proceeding with the taking of plaster cast immediately following the accident, with a serious wound open and fresh; (5) negligence while and in the manner of handling and operating the instrument.

We shall not discuss the first four grounds of negligence alleged, as we are inclined to the opinion that upon these particular allegations, except as some of them may be involved in the fifth ground, the plaintiff failed to make a case justifying submission to the jury. The fifth ground, that defendant was negligent while and in the manner of handling and operating the instrument, we deem a fair subject for consideration on this review.

[1] Dr. Thomas B. Hartzell was a practicing dentist at Minneapolis, Minn., and Dr. J. P. Werrick was a practicing dentist in the employ of Dr. Hartzell. Plaintiff, a married woman 48 years of age, residing at Rosholt, S. D., a farmer's wife, in September, 1921, applied to Dr. Hartzell at his office in Minneapolis, for consultation and treatment of her teeth. Dr. Hartzell performed some extractions and requested plaintiff to call at a later date for the completion of the work. In October following plaintiff kept the appointment, and Dr. Hartzell assigned Dr. Werrick to the work in question, which involved, among other things, the setting of a gold inlay in one of plaintiff's teeth. Plaintiff's testimony tends to show that after the inlay was set in the tooth Dr. Werrick proceeded to polish it. This work was done by the use of a drill driven by an electric motor, on the point of which was fastened a sandpaper disk about the diameter of a dime. Near at hand, at Dr. Werrick's right and slightly back of him, was a stand or table upon which were numerous dental instruments or tools. Ac-

cording to plaintiff's testimony, while the disk was being operated on the tooth, it attained a very rapid movement, and while the disk was so revolving Dr. Werrick turned his head toward the instruments upon the stand mentioned, and just at that time the drill and disk slipped from the inlay, penetrating the floor of plaintiff's mouth, lacerating the tongue, and burying the disk quite deeply in the mouth near the roots of the tongue. Plaintiff testifies that, while she had in mind at the time objecting to the rapid movement of the drill, she did not speak or move.

At the close of all the 'evidence the defendants and each of them moved for a directed verdict on the ground that the plaintiff had not established a cause of action against the defendants or either of them, and that there was no evidence to support a verdict in favor of the plaintiff against either defendant. The trial court sustained defendants' motion, and in so doing announced the grounds of reasons for his ruling. The trial court was of opinion that there was no substantial evidence to support the first three grounds of negligence alleged, which by the way we classify as four grounds. With respect to the fourth ground, which we have classified as the fifth, the trial court announced clearly and particularly the grounds of his ruling thereon. The trial court said:

"I agree entirely with the reasoning of the Wisconsin Supreme Court in the case of Vale v. Noe, 172 Wis. 421, 179 N. W. 572. The proposition that the doctrine of res ipsa loquitur does not apply in cases of the character of the one under consideration seems to be well settled. The case from Iowa, cited by plaintiff's counsel, seems to be out of line with the case law on the subject, and as declared by the case read from 35 App. D. C. 57, to be in conflict with the prevailing rule on the subject.

"The burden of proof rests upon the plaintiff to make a case of negligence on the part of the defendants, and that it was the proximate cause of the injuries which she sustained at the time alleged in the complaint. I am of the opinion that she has not sustained that burden, and is not entitled to have her case submitted to the jury. The injury might have been the result of pure accident. The plaintiff might have moved her head, or tongue, or jaw, as testified to by Dr. Werrick. That she made some movement is denied by the plaintiff, but her denial is not inconsistent with an involuntary movement by her of her tongue. It

is the undisputed evidence in the case that the tongue is an involuntary muscle; that is, that it may move independently of the volition or the will of the subject.

"This is 'rendered very probable in this case by the testimony of the plaintiff that she had noticed the rate of speed at which the disc was revolving, and desired, and was wishing, to .use her tongue and speak to Dr. Werrick. It is not improbable that the tongue involuntarily obeyed the wish that was in her mind. At best, the evidence does not exclude the idea that this was what did occur, and it cannot be said that it is improbable that it was the cause of the accident.

"Again, it is the testimony of a number of the dental experts who testified that the disc is made of paper with sand attached thereto, by the use of some form of glue, and that when it comes in contact with moisture that it crumbles up into a ball, and has a tendency to throw the instrument from the tooth. It seems to me that this is a proper case to which to apply the rule that, where the accident might have resulted from any one of a number of causes, for some of which the defendants would be responsible, and for some of which they would not be responsible, the case should not be submitted to the jury, unless there is evidence that excludes the causes for which the defendants would not be responsible. I do not think that can be said of the evidence in the present case."

Plaintiff in error has assigned numerous errors, but we shall only notice those going to the action of the court in directing the verdict for the defendants, as the 'others either relate to grounds of negligence with respect to which we think there was a failure of proof, or to matters which are not likely to affect a second trial.

[2] The trial court seems to have assumed that, unless this was a case for the application of the rule res ipsa loquitur, no evidence sufficient to warrant submission to a jury is shown in the record. Possibly the trial court was right in this respect, for the line of demarcation between evidence supplied by the circumstances of the accident itself and other evidence closely related thereto is sometimes very dim. The instant case is one of that character. Whether the act of Dr. Werrick in turning his head to look at or for something upon the instrument table at the precise time was one with respect to which "the thing speaks for itself," or whether it is to be considered as independent positive proof, is a matter upon which minds and courts might readily dif-

fer. We do not think it very material, however, in what manner it is regarded. The trial court held, expressing approval of the reasoning of the Supreme Court of Wisconsin in Vale v. Noe, 172 Wis. 421, 179 N. W. 572, that the doctrine of res ipsa liquitur does not apply to cases of the character of the one under consideration. We are not prepared to follow the trial court to this conclusion. While the facts in Vale v. Noe, supra, agree quite closely to the facts in the instant case, the brief notice given by the Wisconsin court to the doctrine under consideration is not to us convincing. No authority was cited by the court in that case and none is cited in the briefs of counsel here which seem to sustain such conclusion.

It will be observed that this is not an action in which is drawn in question through diagnosis, method or manner of treatment, or operation by a physician or surgeon. The theory of plaintiff's allegation and brief in support thereof is, not that the defendant's treatment or operation was unprofessional or below standard or that the defendant was unskillful in his work, but that the defendant was negligent and failed to observe reasonable care while performing the operation, and by reason thereof an untoward act occurred producing a positive and independent injury. The position occupied by the plaintiff at the time, and the superior opportunity of the defendant to observe and know the real cause of the accident, taken in connection with the accident itself and the apparent involved circumstances, seems to us to make the case one to which the rule res ipsa loquitur is applicable. The doctrine res ipsa loquitur is a rule of evidence. In discussing this rule Dr. Wigmore, in Wigmore on Evidence, § 2509, says: "What its final accepted shape will be can hardly be predicted. But the following considerations ought to limit it: (1) The apparatus must be such that, in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user. (2) Both inspection and user must have been at the time of the injury in the control of the party charged. (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. It may be added that the particular force and justice of the presumption, regarded as a rule throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable

or innocent, is practically accessible to him but inaccessible to the injured person."

It would seem to us that the instant case meets all of the requirements. The apparatus was such that no injurious operation or result would be expected unless from careless user. Both inspection and user was at the time in the exclusive control of Dr. Werrick. According to plaintiff's testimony the injury happened without any voluntary action on her part at the time, and certainly Dr. Werrick's opportunity to know the true cause was greatly superior to that of the plaintiff.

The trial court, following comment on the case of Vale v. Noe, supra, pointed out that the evidence was undisputed in the instant case that the tongue is an involuntary muscle; that it is not improbable that plaintiff's tongue involuntarily moved at the time. But it seems to us that the involuntary movements of the tongue in such circumstances are reasonably to be expected, and that such movement is one of the things to be guarded against by one performing the delicate operation of dental surgery. It will be observed that, under the limitations of the rule defined by Dr. Wigmore, it is the voluntary movement that removes the case from the rule, and not the involuntary movement.

The trial court refers to an Iowa case cited and commented upon in Sweeney v. Erving, 35 App. D. C. 57, 43 L. R. A. (N. S.) 734, as being out of line with the case law on the subject. Presumably the court referred to the case of Shockley v. Tucker, 127 Iowa, 456, 103 N. W. 360, as that is the case referred to in Sweeney v. Erving. That was an X-ray case, involving a question of professional treatment, and we conceive it clearly distinguishable from the case at bar. A later case by the Iowa court, Evans v. Roberts, 172 Iowa, 653, 154 N. W. 923, is more closely in point. The very careful opinion of the late Chief Justice Weaver in that case draws the distinction between the two classes of cases we have suggested. He was discussing a case in which a surgeon was operating for the removal of adenoids. One of the appliances slipped, and the surgeon inflicted a very severe wound with his instrument. We quote the late Chief Justice:

"It is the appellant's contention that there is no evidence in the record to support a finding that he was negligent. With this we are unable to agree. Assuming, for the purposes of this case, the soundness of the argument that, in performing an operation,

a surgeon is not held to guarantee results, and that, if he possesses the measure of skill which the law requires, a mere failure of judgment in his choice of methods and means is not actionable negligence, such concession is insufficient for the disposition of the issue of negligence in this case as a matter of law. This is not the ordinary case where a practitioner is sought to be charged with liability for alleged improper treatment of some bodily ailment or infirmity. He was employed to remove the adenoids from the plaintiff's throat, and there is neither claim nor proof that he did not successfully remove them. His negligence, if any, was in failing to take due care to avoid injury to the undiseased parts in the vicinity of which the operation was performed; and while it may be true that, had the operation upon the adenoids been unsuccessful and disappointing, no inference of negligence or want of skill would arise therefrom, it does not follow that this rule applies with the same force to an injury done by him to sound and undiseased parts of the plaintiff's person, which he was not called upon to treat and did not pretend to treat. If a surgeon, undertaking to remove a tumor from a person's scalp, lets his knife slip and cuts off his patient's ear, or if he undertakes to stitch a wound on the patient's cheek, and by an awkward move thrusts his needle into the patient's eye, or if a dentist, in his haste, leaves a decayed tooth in the jaw of his patient and removes one which is perfectly sound and serviceable, the charitable presumptions, which ordinarily protect the practitioner against legal blame where his treatment is unsuccessful, are not here available.

"It is a matter of common knowledge and observation that such things do not ordinarily attend the service of one possessing ordinary skill and experience in the delicate work of surgery. It does not need scientific knowledge or training to understand that, ordinarily speaking, such results are unnecessary and are not to be anticipated, if reasonable care be exercised by the operator. When they do happen, then proof of other facts and circumstances having any fair tendency to sustain the charge of negligence will be sufficient to take the question to the jury, and this may be true even though, if the alleged negligence pertained solely to the treatment of the diseased parts, the court might be inclined to dispose of it as a matter of law. In the case of Evans v. Munro (R. I.) 83 Atl. 82, it was proved that a surgeon performing an operation placed a foreign substance in the wound to serve as a drain, which he afterwards failed to remove, and the patient suffered injury therefrom; and it was held that proof of this fact alone imposed upon him the burden of explaining his failure in a manner consistent with due care on his part. A similar rule is laid down in Davis v. Kerr (Pa.) 86 Atl. 1007, and in Adams v. Hospital (Mo.) 99 S. W. 453. That there is evidence of negligence, in addition to the fact of the injury, can hardly be questioned. Defendant did not see fit to testify in the case; hence the trial court and jury and this court are without the assistance which might possibly have been furnished by his explanation of the matter. We have, however, his statement at the time that the 'gag slipped'; but as he himself furnished the instrument, and himself placed it in the child's mouth, the jury, in the absence of other explanation, might naturally and properly infer that defendant failed to properly fit and adjust it for its intended purpose. Again, if we are to believe the father of the child—and his credibility was for the jury—defendant pulled the instrument from the child's mouth with a more or less sudden and violent jerk, which was scarcely consistent with care to avoid injury of this kind to his patient; and that the effect of such violence was seen, not only in the wounded tongue, but in the bruised and lacerated mouth, as well. This, we think, was ample to take the question of negligence to the jury."

In our opinion the reasoning of Mr. Justice Weaver is applicable to the present case, and, unless we are to be confined to the testimony of expert witnesses, that there was ample evidence in the conceded circumstances of the case and the testimony of the plaintiff to carry the case to the jury.

[3] A question is raised as to whether any but expert testimony with respect to the acts of Dr. Werrick is competent. That question was raised in Evans v. Roberts, supra, and we again quote from Mr. Justice Weaver:

"If we understand counsel correctly, it is their contention that negligence in cases of this nature can be established only upon the testimony of competent experts. What may be the rule where the sole question is upon the treatment of the diseased part, and whether it was in accordance with approved and medical standards, we need not here decide; for, as we have already noted, this is not a case of that kind. The jury here did not have to consider whether the method of the defendant in removing the adenoids was

correct or scientific, but whether the unintentional wounding of plaintiff's tongue was occasioned by lack of reasonable care on his part. This, it would seem very clear, involves no question of science or necessarily of expert knowledge. Referring to a similar argument in a malpractice case, the Supreme Court of Washington has said:

" 'It is argued on behalf of the respondent (1) that whether a surgical operation was unskillfully performed is a question of science, and is to be determined by the opinion evidence of surgeons; and (2) in effect that a bad result standing alone is no evidence of unskillful surgery. From these postulates, it is argued that there is no evidence to sustain the verdict. Both propositions are sound when soundly applied. The reason is that in most cases a layman can have no knowledge whether the proper medicine was administered or the proper surgical treatment was given. Whether a surgical operation was unskillfully or skillfully performed is a scientific question. If, however, a surgeon should lose the instrument with which he operates in the incision which he makes in his patient, it would seem as a matter of common sense that scientific opinion could throw little light on the subject.' Wharton v. Warner, 75 Wash. 470, 475, 135 Pac. 235, 237.

"So, too, we might add, by way of further illustration, that, if a physician undertakes to administer a medicinal poison, like strychnine or arsenic or morphine, and by mistake gives the patient an admittedly fatal overdose, it would be a startlingly illogical proposition to hold that the question whether he exercised due care is to be determined by expert evidence alone. Nor is it any answer to say that the most eminent and most skilled practitioners are human, and that at times the most careful among them make mistakes. See Reynolds v. Smith, 148 Iowa, 264, 271, where we said upon the subject: 'The most proficient are subject to the infirmities of human nature, and, as the books demonstrate, sometimes may lapse below the standard by which their conduct is to be measured.' In the same case we held that the jury was not necessarily bound by the expert testimony, but could take into consideration the proved facts and circumstances attending the operation. Neither, in the present case, is it sufficient to say that the child, by some sudden and unlooked for movement or struggle, must have caused the unexpected and unintended contact of her tongue with the instrument, notwithstanding the exercise of due care by the defendant. Her father swears that she did not move until the act was done, and defendant, the only other person who could speak to the fact, declines to do so. That upon the whole record the issue of negligence was for the jury we cannot doubt."

We again agree with the Iowa court in the distinction drawn between cases involving the merits of a diagnosis and scientific treatment and cases where during the performance of surgical or other skilled operations an ulterior act or omission occurs, the judgment of which does not require scientific opinion to throw light on the subject.

It is our judgment that the trial court erred in directing a verdict for the defendants, and that the case should be and is reversed.