**BANDY v. UNITED STATES.**

No. 751.

United States District Court
D. Nevada.

Aug. 22, 1950.

Howard W. Babcock, Reno, Nev., for plaintiff.

Miles N. Pike, United States Attorney, Bruce R. Thompson, Assistant United States Attorney, Reno, Nev., for defendant.

FOLEY, District Judge.

Plaintiff's complaint, filed December 30, 1948, purports to set forth a cause of action against the United States pursuant to the provisions of the Federal Tort Claims Act, §§ 921 to 946, 28 U.S.C.A., now 28 U.S.C.A. §§ 1346, 2671 to 2680.

Defendant contends that as a matter of law plaintiff cannot recover under his complaint. This contention is based upon the Second and Third Defenses set forth in the Answer. The contentions are summarized in defendant's Answering Brief as follows:

"1. Plaintiff made an election of remedies by requesting and obtaining compensation under the Veterans' Compensation Act; and

"2. The disability from the scars is a service-connected disability for which recovery cannot be had under the exceptions of the Federal Tort Claims Act."

■ Defendant's first contention has been rejected by the Supreme Court of the United States in Brooks v. United States, 1949, 337 U.S. 49, 69 S.Ct. 918, 920, 93 L. Ed. 1200. There Justice Murphy, speaking for the Court, said: "Provisions in other statutes for disability payments to servicemen, and gratuity payments to their survivors, * * * indicate no purpose to forbid tort actions under the Tort Claims Act. Unlike the usual workman's compensation statute, * * * there is nothing in the Tort Claims Act or the veterans' laws which provides for exclusiveness of remedy. * * * Nor did Congress provide for an election of remedies, * * *."

Conceding that the disability resulting from plaintiff's treatment in the Veterans' Hospital is a service-connected disability, the question whether recovery can or cannot be had under the Federal Tort Claims Act is one concerning which there is wide divergence of opinion. In Jefferson v. United States, D.C., 77 F.Supp. 706, affirmed Jefferson v. United States, 4 Cir., 178 F.2d 518, the Court denied relief to a serviceman for injuries resulting from negligence of an army surgeon in failing to remove a towel before closing the surgical wound. In that case the Judge held that the statute was not intended to cover claims by members of the armed forces of the United States for service-connected injuries suffered while in the service. Here the complained of injury is the result of treatment administered in the Veterans' Hospital, Reno, Nevada, of an ailment, chorea, contracted while plaintiff was in the servic.. in the United States and not in combat.

The case here is not within any of th.. exceptions contained in § 2680, 28 U.S C.A. Judge Chesnut found an implied exception ascertained by applying the rule of statutory construction that the merely literal reading of particular words in an Act can be narrowed by construction where, from the whole subject matter of the particular Act ad its setting in the whole governmental scheme, the Court can see that the literal import of the phrase used is contrary to established policy and would not accord with the real intention of Congress in passing the Act.

In Brooks v. United States, supra, Justice Murphy, in agreeing with Judge Parker of the 4th Circuit, 169 F.2d 840, said: "The statute's terms are clear. They provide for District Court jurisdiction over any claim founded on negligence brought against the United States. We are not persuaded that 'any claim' means 'any claim but that of servicemen.' The statute does contain twelve exceptions. § 421 [now 28 U.S.C.A. § 2680]. None exclude petitioners' claims. One is for claims arising in a foreign country. A second excludes claims arising out of combatant activities of the military or naval forces, or the Coast Guard, during time of war. These and other exceptions are too lengthy, specific, and close to the present problem to take away petitioners' judgments. Without resorting to an automatic maxim of construction, such exceptions make it clear to us that Congress knew what it was about when it used the term 'any claim.' It would

be absurd to believe that Congress did not have the servicemen in mind in 1946, when this statute was passed. The overseas and combatant activities exceptions make this plain."

In Griggs v. United States, 10 Cir., 178 F.2d 1, Note 1 on page 2, the Court, in commenting on the change in the Federal Tort Claims Act brought about by the revision of the United States Code, stated:

"By the 1948 revision of the United States Code, the Federal Tort Claims Act was amended and Section 931 which provided exclusive district court jurisdiction of 'any claim against the United States' now provides exclusive jurisdiction 'of civil actions on claims against the United States.'

"We do not regard the change in phraseology as indicating a congressional purpose to narrow the scope of jurisdiction under the Act. The Government does not so contend."

In the dissenting opinion referred to by Justice Murphy, Judge Parker, in United States v. Brooks, 4 Cir., 169 F.2d 840, on page 848, said: "Another reason for holding that it was not the intention of Congress to exclude soldiers from the protection afforded by the act is that the act itself lists twelve exceptions to its application under the heading of exceptions and no such exception is listed among them."

■ If Congress intended to exclude servicemen, it would have been a simple matter to have expressed the exception. The process of judicial lawmaking should not be invoked to create an exception which Congress has refused to make by legislation.

The allegations of negligence set forth in Paragraph XI of the complaint are as follows:

"That on said day and at said time and place the Defendant's agents, servants and employees, then and there acting within the course and scope of their employment, were negligent, careless and reckless; that not by limitation of, but in addition to the said negligence, carelessness and recklessness, Plaintiff alleges that the Defendant's agents, servants and employees were negligent, careless and reckless in the following particulars.

"1. That disregarding its duties, the Defendant, by its agents, employees and servants, failed and neglected to provide safe and proper equipment for the treatment rendered herein.

"2. That the Defendant by its agents, employees and servants knew, or should have known, that the box-like enclosure was not designed for the use it was put to.

"3. That the Defendant by its agents, servants and employees, knew, or should have known, that the aforesaid equipment was a dangerous instrumentality as and when used for the treatment given this Plaintiff.

"4. That the Defendant by its agents, employees and servants, failed and neglected to remove the Plaintiff from the box-like enclosure when Defendant's agents, servants and employees knew that Plaintiff was dizzy, faint and physically ill.

"5. That the Defendant by its agents, employees and servants, failed and neglected to provide treatment under the supervision and control of a Medical Doctor and that no-one, excepting a Physio-Therapist, an agent, employee or servant of Defendant, was present during the period of time the aforesaid treatment was rendered to Plaintiff, in violation of the rules and regulations pertaining to the operations of Defendant's hospital.

"6. That Defendant, by its agents, employees and servants, carelessly, negligently and recklessly removed the Plaintiff from the aforesaid enclosure when they knew, or should have known, that he was in a state of unconsciousness."

The first portion of said Paragraph XI constitutes a general allegation of negligence.

Paragraph XII of the complaint charges "that solely by reason of and as a direct and proximate result of negligent, careless and reckless acts and omissions of the Defendant by its agents, employees and servants, heretofore alleged, * * *." Here again negligence is charged in general terms.

It appears from the complaint that negligence here is pleaded both generally and specially. Vergeldt v. Hartzell, 8 Cir., 1 F.2d 633; McComas v. Al. G. Barnes Shows Co., 215 Cal. 685, 12 P.2d 630, Syllabus 3. The injuries to plaintiff were sustained by reason of burns resulting from contact with the "hot electric lamps" inside the cabinet, but the cause of such contact which resulted in the injuries complained of is left in doubt by both the pleadings and the evidence.

The situation here is like that in Chauvin v. Krupin et al., 4 Cal.App.2d 322, 40 P.2d 904. At bottom of page 905 of 40 P.2d, the California Court goes on to say: "It is a case in which the application of the res ipsa loquitur doctrine is eminently just and proper. The devices used in the process were under the exclusive control of the defendants. The injury was one which in the natural course of things would not have occurred had defendants used due care, and plaintiff was therefore entitled to recover, unless the defendants offered a satisfactory explanation to overcome the presumptive evidence of their negligence. This they failed to do. Their testimony, in effect, was that their work was done so carefully that it would have been impossible for plaintiff to have sustained the injury claimed. No attempt was made, however, to account for the fact that, when the operation was finished, plaintiff was suffering from a severe burn. The attempted explanations of defendants were not satisfactory to the trial court, and the finding of negligence is amply supported by the evidence."

The instrumentality which caused the injury here was under the control of the defendant and the injury was caused by some act incidental to that control, the accident being one which would not happen in the ordinary course of a treatment such as the plaintiff was subjected to if those having the management and application of such treatment used proper care.

 The doctrine of res ipsa loquitur, the thing itself speaks, is applicable here. Vergeldt v. Hartzell, supra; Brown v. Shortlidge, 98 Cal.App. 352, 277 P. 134. An issue of plain negligence and failure to use proper care as to which a layman is as competent to judge as a physician and surgeon is presented. Vergeldt v. Hartzell, supra. The burden was thus cast upon the defendant to explain how the injury occurred.

From the above considerations and defendant's failure of explanation, an inference of negligence upon the part of the defendant arises. Brown v. Shortlidge, supra; McComas v. Al. G. Barnes Shows Co., supra; Pontecorvo v. Clark, 95 Cal. App. 162, 272 P. 591; Chauvin v. Krupin, supra.

This action came on regularly for trial before the Court without a jury, and the Court, having heard the testimony and examined the proofs offered by the respective parties, and the cause having been submitted for decision, now finds the facts and states conclusions of law as follows:

## Findings of Fact

1. That jurisdiction of this action is conferred upon this Court by the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 921 and 946, and §§ 1346(b) and 1402(b) of T. 28, new revision. That the act or omission complained of occurred in the District of Nevada.

2. That plaintiff was 22 years of age and was honorably discharged from the service of the United States Army on September 16, 1946, with a rheumatic fever disability incurred while in said service.

3. That the Veterans' Administration Center, Reno, Nevada, is a governmental agency acting for and on behalf of the defendant herein; that the aforesaid Veterans' Administration Center, in conjunction with its other facilities, maintains and operates for and on behalf of the defendant a hospital in the City of Reno, State of Nevada, for the benefit of certain United States citizens and war veterans including this plaintiff.

4. That on or about the 3rd day of March, 1948, plaintiff entered and was received into the aforesaid hospital as a patient for the purpose of receiving examination and treatment, if necessary, of the rheumatic disability.

5. That on or about the aforesaid date an examination was made by defendant through its agents, employees and servants of plaintiff's disability and it was determined and prescribed by certain agents, employees and servants of said defendant that fever heat treatments be administered to plaintiff.

6. That on or about March 4, 1948, plaintiff, with his consent, was placed by defendant's employees in an electric cabinet bath; that said cabinet bath contained in each of the four corners thereof a row of three or more lights, all of which were not enclosed but were exposed, and there was also a row of said exposed lights in the middle of the rear wall of said cabinet.

7. That plaintiff, just prior to said treatment, was informed by certain agents, employees and servants of said defendant that he was to remain enclosed in said cabinet for a period of one hour during which time his body temperature was to have been raised from normal to 104° Fahrenheit.

8. That plaintiff was subjected to said heat treatment for a period approximating twenty minutes; that during said time he complained to the attendant employees of defendant, who were then and there acting within the course and scope of their employment as agents, servants and employees of defendant, that he was feeling dizzy and faint and requested to be removed from said cabinet bath; that plaintiff was not removed from said cabinet bath, notwithstanding his request to be removed therefrom; that while in the enclosure during the aforesaid time plaintiff became unconscious; that his body came in contact with hot electric lamps inside the cabinet. That approximately thirty minutes after entering said cabinet plaintiff was removed therefrom in an unconscious condition.

9. That in the administration of said treatment, defendant's agents, servants and employees, then and there acting within the course and scope of their employment, were negligent.

10. That solely by reason of and as a direct and proximate result of the negligent acts and omissions of the defendant through its agents, servants and employees in and about the aforesaid treatment, and without any negligence on the part of the plaintiff, the plaintiff Richard Edward Bandy did thereby have inflicted upon him the following bodily injuries, to-wit: First and second degree burns of right thigh, right shoulder, right arm, left arm and left thigh, affecting 40% of body surface, leaving approximately 190 sq. in. of scar tissue; that after seven weeks' treatment a skin graft was made on lateral aspect of the right thigh, the skin having been taken from a 14-inch area of plaintiff's left leg; and at the place where the skin graft was applied there was a third degree burn of approximately 6 sq. in.

11. That as a result of the injuries resulting from said treatment, plaintiff was confined in the Veterans' Hospital at Reno, Nevada, from March 5, 1948, to May 10, 1948, at which time he was released to visit home on a 72-hour pass and that on May 13, 1948, plaintiff returned to the hospital; that on May 14, 1948, he was released to visit home on a 72-hour pass and returned to the hospital on May 17, 1948, and remained there to May 21, 1948, at which time he was permitted to leave for 14 days; and that plaintiff was finally discharged from said hospital June 4, 1948.

12. That during the said time plaintiff was in said hospital he was confined to his bed for approximately one month, three weeks of which time he was required to lie on his back; that he suffered intense and severe pain and anguish for about two months after sustaining said injuries.

That as a result of said injuries tenderness still continues in the burned areas of plaintiff's body; that hot bathwater causes discomfort and pain and that contact with wool clothing results in irritation and itching, such annoyances and discomfort not having been experienced by plaintiff prior to said treatment; that prior to the injuries resulting from said treatment plaintiff frequently indulged in swimming as a sport and recreation; that due to the permanent scars and the permanent disfigurement on plaintiff's body he can no longer engage in swimming in public places without great

embarrassment to himself, discomfort to persons within view of him and without fear of being ejected from public swimming pools.

13. That after his discharge from the Veteran's Hospital on or about June 4, 1948, plaintiff resumed his occupation as a mechanic for which he received $1.21 per hour and that since resuming his occupation, and to the time of the trial, he has received raises in his pay scale resulting in earnings at the time of the trial at the rate of $1.70 per hour. That at the time of the trial plaintiff was able to perform the usual and customary duties of the type of employment that he performed prior to entering the hospital for the aforesaid treatment.

14. That through the Veterans' Administration of the United States, and pursuant to Acts of Congress fixing compensation for injuries and disabilities, plaintiff has received for and on account of the injuries resulting from the aforesaid treatment the total sum of $868.78.

That plaintiff was born September 23, 1926 and has a life expectancy of 40.17 years. That he will continue to receive $30.00 per month or $360.00 for each year during the balance of his lifetime unless such compensation should be changed by Acts of Congress or rulings or regulations of the Veterans' Administration; and that no evidence was received at the trial that said $30.00 per month, now being paid for the injuries sustained by reason of the aforesaid treatment, would be discontinued, decreased or increased.

That during the period beginning March 5, 1948, and ending May 24, 1948, a total of eleven weeks and two days, plaintiff was deprived of his earnings at the rate of $50.80 per week, or a total sum of $579.15.

15. That by reason of the hereinabove described temporary and permanent injuries, pain, anguish, shock and disfigurement, plaintiff has been damaged in the sum of $15,000.00.

16. That the actual payments made to plaintiff plus the present cash value of payments actually made to plaintiff in the future by the Veterans' Administration as compensation for the above described injuries be deducted from said damages of $15,000.00.

17. That a reasonable attorney's fee for plaintiff's attorney for services rendered or to be rendered in the further prosecution of this action is a sum equal to 20% of the sum remaining after the award of $15,000.00 damages is reduced as provided for in Finding of Fact No. 16, said fee to be paid out of the judgment to be rendered herein.

## Conclusions of Law

From the foregoing Findings of Fact the Court concludes:

1. That plaintiff Richard Edward Bandy has been damaged in the sum of $15,000.00 and is entitled to judgment against the defendant United States of America in the sum of $15,000.00, less the amount of payments made to him by the Veterans' Administration and the present cash value of prospective payments actually made to him in the future by the Veterans' Administration. That plaintiff recover costs actually incurred for witnesses and fees paid to the Clerk.

2. That a reasonable attorney's fee for plaintiff's attorney for services rendered or to be rendered in the further prosecution of this action is a sum equal to 20% of the sum remaining after the award of $15,000.00 damages is reduced as provided for in Finding of Fact No. 16, said fee to be paid out of the judgment to be rendered herein.

3. That this case be, and it is hereby reopened for further hearing on the question of the amount of compensation heretofore paid by the Veterans' Administration to plaintiff as compensation for the aforesaid injuries, and for the purpose of determining the present cash value of prospective payments actually to be made by the Veterans' Administration to plaintiff for the said injuries. This hearing to be had unless counsel enter into a stipulation as to the amount of deductions to be made, said stipulation to be without prejudice to any questions raised or which may be raised upon an appeal.

At the conclusion of the further hearing above provided for, or upon the above suggested stipulation if made, judgment may be entered according to the Findings of Fact and Conclusions of Law and the determinations made upon said further hearing or pursuant to the suggested stipulation.

Jurisdiction of this action and of the parties hereto is retained for all purposes.