[Civ. No. 2745.  First Appellate District, Division Two.—March 18,
1919.]

EMILIO OLCESE, as Administrator, etc., Respondent, v.
JAMES H. HARDY, Appellant.

[1] EVIDENCE — CONTRADICTORY STATEMENTS — WEIGHT.—Contradictory
statements of the plaintiff in an action for damages for personal
injuries do not necessarily nullify his testimony; but the weight
to be given it might be lessened by such contradictions or the jury
might reject the testimony entirely.

[2] ID.—DUTY OF APPELLATE COURT.—It is the duty of an appellate
court to reconcile apparent contradictions in evidence whenever pos-
sible.

[3] NEGLIGENCE — ACTION FOR PERSONAL INJURIES — ASSUMPTION OF RISK—DEFENSE.—In an action against the employer for damages for personal injuries received while the Roseberry Act was in force, evidence going to the defense of assumption of risk by the employee could be of no avail to such employer.

[4] EVIDENCE—CONFLICT—APPELLATE REVIEW.—Where there is a substantial conflict in the evidence, the appellate court is precluded from disturbing the verdict.

[5] ID.—SUFFICIENCY—VERDICT.—There is no fixed standard for the sufficiency of evidence to induce belief, and unless the evidence so clearly preponderates against the verdict that the court cannot conclude that the verdict was the result of a due consideration of the evidence, the verdict will not be disturbed.

[6] NEGLIGENCE — ACTION FOR PERSONAL INJURIES — CONTRIBUTORY NEGLIGENCE—DIMINISHED DAMAGES.—Where, in an action by an employee against the employer for damages for personal injuries received while the Roseberry Act was in force, the court instructed the jury that the fact that such employee might have been guilty of contributory negligence would not preclude a recovery if such negligence was slight, while that of the employer was gross in comparison, but that the damages might be diminished by the jury in proportion to the amount of negligence attributable to such employee, the appellate court must assume in support of the judgment that if the evidence in any particular did show negligence on the part of the employee, the jury made the proper deduction therefor in arriving at its verdict.

[7] ID.—ACTION FOR PERSONAL INJURIES—PLEADING—PROOF.—Where, in such an action, the general allegations of negligence are followed by an enumeration of specific acts, the plaintiff will not be limited to proof of specific acts unless the complaint clearly indicates the intention of the pleader to limit the negligence to such acts.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge. Affirmed.

The facts are stated in the opinion of the court.

James Alva Watt, Rolla Bishop Watt and Watt, Miller, Thornton & Watt for Appellant.

Sullivan & Sullivan and Theo. J. Roche for Respondent.

LANGDON, P. J.—This action was instituted by the plaintiff's intestate, Louis Burger, against the defendant for dam-

ages for personal injuries alleged to have been received by Burger through the carelessness and negligence of the defendant while Burger was in the employ of the defendant. Burger having died on the twentieth day of July, 1915, the plaintiff above named, as administrator of his estate, was substituted as plaintiff. The defendant answered denying any carelessness or negligence and setting up as a separate defense that the accident and injury were due solely to the carelessness of Burger. The jury rendered a verdict for the plaintiff and judgment was rendered thereon in the sum of $5,750, from which judgment the defendant appeals. Appellant contends that the judgment should be reversed on the grounds that the evidence is insufficient to justify the verdict and errors in law occurring at the trial.

The appellant argues at some length the insufficiency of the evidence to justify the verdict. He admits that the evidence of Burger given on his direct examination is sufficient to raise a conflict in the evidence and consequently to preclude this court from reviewing the evidence, but contends that Burger contradicted this testimony on cross-examination and at the taking of his deposition before the trial, and that, therefore, this testimony is without weight; and that without this testimony there is no evidence to support the verdict of the jury.

[1] We do not believe that contradictory statements of plaintiff, if there are any, necessarily nullify his testimony; the weight to be given it might be lessened by such contradictions or the jury might reject the testimony entirely, but the fact that the jury found for the plaintiff conclusively shows that they accepted his statements on direct examination as true. But admitting that there are conflicts and contradictions in his testimony, and considering that portion of his testimony which is least favorable to his contention, it seems to us that this court would not be justified in reviewing the evidence under the record in this case. Construing the portions of plaintiff's testimony which are quoted in the briefs of appellant and urged as contradictory most strongly against plaintiff, we shall proceed to analyze the testimony.

The facts are briefly these: The defendant was engaged in the lumber and mill business in San Francisco. Louis Burger entered his employ and operated a ripsaw machine for a few weeks, after which he was made the working foreman of the mill and was placed in charge of a machine known as a

"sticker machine." His work consisted in feeding the boards into the machine; the boards would then pass under the revolving rollers and move toward the revolving head, which made approximately three thousand two hundred revolutions a minute. To this revolving head were attached removable blades of various shapes and these blades or knives would cut or plane or curve, as occasion required, the pieces of lumber passing under the revolving head. When Burger took charge of the machine there were certain blades there for use in the operation of the machine. Burger tried all of the blades, but claimed that a certain type of thin hard blade among the blades provided was the only type of blade with which the quantity of work expected to be done could be obtained. It was this type of blade which flew off the head and inflicted the injury upon Burger. In his direct examination Burger testified that within a few weeks after he took charge of the sticker machine he informed the defendant that the head was defective and asked him to get a new one. He testified that he told the defendant that the head had nicks in it that made it unsafe. He also testified that he suggested that an iron cylinder head in which the blades drop in a slot be obtained, and that the defendant promised to get a new head for the machine. Burger also testified in his direct examination that on many occasions prior to the happening of the accident these blades, clamped as they were to the head, worked loose while the head was revolving and flew out some distance from the machine, and that Burger called the attention of the defendant to this, and that the defendant himself was present and saw the blades fly out on several occasions. Burger also testified that the defendant inquired of him how the danger from flying blades could be overcome, and that he (Burger) directed his attention to a new type of sticker machine which was being generally used by mills in San Francisco; the defendant asked if the old machine could not be changed so as to overcome the danger, and Burger told him that that was impossible. The defendant then told Burger that when business got a little better, he thought he could afford the new type of machine. The accident happened on April 16, 1913. On the evening of April 15, 1913, the defendant told Burger that there was some "stuff" to be worked on the next morning and to force the work as much as possible. On the morning of the accident, Burger arrived at

his work about 8 o'clock. He was using a thin hard blade in the machine, one which had been in use in the machine the previous afternoon. After operating the machine for about twenty minutes the accident occurred. The blade became loosened and flew out and struck Burger in the head, inflicting serious injury upon him.

We now come to a consideration of the cross-examination of the plaintiff, which it is claimed by appellant completely destroys the force of the evidence upon the direct examination. It is first claimed by appellant that the cross-examination shows that Burger himself purchased the particular blade which caused the injury. The evidence only goes to the extent of showing that Burger, acting for his employer, purchased the particular blade which was used on the day of the accident to replace others of the same pattern which had become worn. It does not contradict the testimony elicited in the direct examination that the form of blade was among the original blades furnished Burger by the defendant, and that Burger was not responsible for its introduction into use in defendant's business.

As opposed to Burger's testimony on direct examination to the effect that the head of the machine was defective, appellant points out that Mr. Burger testified on his cross-examination that an inspector for an insurance company made an inspection of the mill, including the sticker machine by the operation of which the plaintiff was injured, and the inspector and Burger talked of what changes of importance should be made in and about the sticker machine to make it safe; and that Burger did not inform the inspector of any defects in the head or blades or hood of the machine. While, of course, the fact that he did not make known these defects to the inspector is persuasive of the fact that they did not exist to his knowledge at the time, it is not direct evidence upon that fact, and we cannot say that it is directly contradictory of the evidence given on the direct examination, that the defects did exist. It is entirely possible for the defects to have existed and yet for the plaintiff not to have mentioned them to the inspector. [2] And it is the duty of an appellate court to reconcile apparent contradictions in evidence whenever possible.

Appellant next argues that the cross-examination shows that Burger had full authority to make purchases and was in full

charge and control of the mill. There is some testimony from which the jury might have taken this view of the matter, but there is also testimony to the effect that Mr. Hardy was consulted, and that he authorized the purchase of all supplies when such purchases were made, and there is testimony in regard to numerous conversations between Mr. Burger and Mr. Hardy concerning changes in the revolving head and in the machine, from which the jury might have believed that Mr. Burger's authority in making purchases and changes was a very limited authority. Under these circumstances, we do not think that we can interfere with the implied finding of the jury in regard to this matter.

Appellant refers to certain testimony elicited upon cross-examination, showing, he contends, that Burger was fully informed of the defects in the machine and that he continued to operate the machine after such knowledge. This would go to the defense of assumption of risk if that defense had been open to the defendant at the time of the accident. However, the Roseberry Act [Stats. 1911, p. 796] was in force at the time of the accident, and abolished this defense. [3] Therefore this testimony can be of no avail to appellant.

It is argued that the testimony shows that the knife which injured Burger came loose, not because of any defect in it, but because of Burger's failure to tighten the nut and bolt that held it in place. This question was one for the jury, along with the general question of Burger's negligence in all particulars connected with the accident. We cannot disturb its finding thereon. It is the province of the jury to draw deductions from testimony, but the appellant overlooks this and asks us to decide from the testimony that the accident could not have occurred if a certain blower or hood attached to the machine had been down at the time the blade flew out. The jury was taken to the scene of the accident and examined the machine in question; they had before them evidence to the effect that the hood was merely for the purpose of catching shavings; that the hood was defective and difficult to pull down; that it interfered with the speed of the machine, and that Burger had been requested to hasten with the work, and other similar matters. This question is again a part of the larger question of whether or not Burger had been negligent, and, as stated before, we cannot interfere with the finding

of the jury upon this subject, so long as there is any substantial conflict of the evidence.

[4] We have discussed the evidence at this length in an effort to demonstrate that even if we construe the conflicts in Burger's testimony most strongly against him, yet there remains a substantial conflict in the evidence which will preclude us from going into the questions involved. Upon appeal, in this state, if there is any evidence to justify the verdict it cannot be disturbed. [5] There is no fixed standard for the sufficiency of evidence to induce belief, and unless the evidence so clearly preponderates against the verdict that the court cannot conclude that the verdict was the result of a due consideration of the evidence, the verdict will not be disturbed.

Appellant contends that the verdict is against law in certain particulars specified in his brief. . Upon these matters, we have found the evidence conflicting. The instructions of the court fully covered the points and stated correctly the law to the jury. We must assume that the jury followed these instructions, and found the facts to be such as to justify their verdict in the light of the law contained in the instructions. Furthermore, the jury was instructed in conformity with the Roseberry Act, that the law of this state provides that in an action to recover damages for a personal injury sustained within this state by an employee, while engaged in the line of his duty or in the course of his employment as such employee in which a recovery is sought upon the ground of want of ordinary care of the employer or of any officer, agent, or servant of the employer, the fact that such employee may have been guilty of contributory negligence—if such negligence was slight, while that of the employer was gross in comparison—will not preclude a recovery, but the damages may be diminished by the jury in proportion to the amount of negligence attributable to such employee. [6] We must assume in support of the judgment that if, as the appellant contends, the evidence in any particular did show negligence on the part of Burger, that the jury made the proper deductions therefor in arriving at its verdict.

A number of alleged errors in the admission and exclusion of evidence are urged. On direct examination Burger was explaining the different kinds of knives which might be used in sticker machines, such as he was operating at the time he was injured. Defendant objected to a question wherein

Burger was asked whether the defendant had furnished a certain type of high-tempered steel blade, which the plaintiff had previously testified was used by almost every mill in San Francisco. Defendant objected to the question and answer for the reason that the witness had previously testified that that type of blade was so soft that "if a man runs one hundred feet with one of them without stopping to sharpen, he is absolutely lucky," and also because the witness had previously testified in relation to the same type of blade that he did not believe that the blades could have been bought at the time of the accident. Appellant urges that by permitting the question to be answered by the witness, the court left it to the jury to infer that because the blades referred to were not furnished, the defendant was guilty of negligence, and that such an inference was not warranted in the light of the fact that Burger himself had testified that the blades were soft and unsuitable for his work, and that it was unlikely that they could have been procured by the defendant. If this was error, it was not prejudicial to the defendant because the jury had before them all the statements of Burger as to the blades, the uncertainty of procuring them, etc. If it drew inferences from the testimony, we must assume it drew inferences based upon all the testimony presented, and that it considered the statements of Burger with regard to the impracticability of these blades and to the improbability of being able to procure the same, in connection with his statement that they had not been furnished by the defendant.

The legal propositions urged by appellant in arguing his objections to this and other evidence are the same propositions which he has urged elsewhere, and, as stated before, we believe these matters were fully and fairly covered by the instructions of the court.

While Burger was testifying the court asked him a question regarding the position of the blade or knife. Burger answered this question, and after answering it, proceeded with a lengthy explanation concerning his adjustment and operation of the machine on the day of the accident. In this explanation he mentioned certain defects in the blower or hood of the machine which he stated prevented it from being pulled down. Defendant objected for the reason that the defects in the blower or hood were not relied upon in the complaint, and that this matter was not within the issues. A portion

of the answer of Burger was responsive to the question and to the issues in the case. The motion was to strike out the entire answer, and we think it was properly denied. But apart from this reason, we think that the evidence was properly admitted. The amended complaint alleged: "That on said April 16, 1913, said sticker with the said steel blades attached thereto was defective and dangerous and insecure and was unsafe and dangerous . . ."; and also that "through the carelessness and neglect of the defendant to furnish a safe sticker and blades therefor, one of said blades became detached and broke." Here is an allegation of defective machinery, as well as a later allegation of special defects in the blades attached thereto. The case of *Monaghan* v. *Pacific Rolling-Mill Co.*, 81 Cal. 190, [22 Pac. 590], holds that where there is an allegation of defect in machinery, the cause of action is not limited to a defect in one part thereof. [7] Where general allegations of negligence are followed by an enumeration of specific facts, the plaintiff will not be limited to proof of specific acts unless the complaint clearly indicates the intention of the pleader to limit the negligence to such acts. (*United States Exp. Co.* v. *Wahl*, 168 Fed. 851, [94 C. C. A. 260]; *Traver* v. *Spokane St. Ry. Co.*, 25 Wash. 225, [65 Pac. 284]; *Roberts* v. *Sierra Ry. Co.*, 14 Cal. App. 193, [111 Pac. 519, 527].)

The appellant urges several objections to evidence on the ground that the questions and answers had the effect of informing the jury that an insurance company was interested in the litigation and consequently of prejudicing the jury in favor of the plaintiff. While this testimony may have had that effect, incidentally, it becomes unnecessary for us to decide whether or not errors occurred in its admission, for the reason that the defendant could not have been prejudiced, because the defendant himself introduced considerable evidence showing that an insurance company was interested in the case. It brought out upon cross-examination of Burger that an inspector for an insurance company had visited the mill and examined the machinery for defects; also that a few days prior to the accident a letter was written to the insurance company stating that all the defects in the plant had been remedied.

There are several other specifications of error in the rulings of the trial court upon evidence, all of which we have ex-

amined and find them to be without merit. It is unnecessary to discuss them separately here. From an examination of the entire record it appears that substantial justice has been done between the parties.

The judgment is affirmed.

Brittain, J., and Haven, J., concurred.