[L. A. No. 9854. In Bank.—March 25, 1929.]

DOROTHY RAGIN, Respondent, v. A. ZIMMERMAN, Appellant.

Perry F. Backus for Appellant.

Rosenthal & Rosenthal and Louis Babior for Respondent.

SEAWELL, J.—Respondent herein, a young woman stenographer, brought this action in the superior court of the county of Los Angeles to recover damages on account of electric burns, shock and physical and mental pain inflicted upon her by and through the negligent and careless operation of an X-ray machine by the dental nurse, who was also the X-ray operator, employed by appellant, in an attempt to take a radiograph of respondent's chin. Appellant was a regularly licensed and practicing dentist in the city of Los Angeles, and in connection with the practice of dentistry conducted an X-ray laboratory in which X-ray photographs were taken as a means of determining the condition of the alveolar process and other related parts of the dentigerous anatomy.

Said cause was tried by the court, a jury having been expressly waived. Upon the submission of the case the trial court gave judgment for plaintiff in the sum of $1,250, which gross sum included the specific sums of $25 for medical attention and medicines, $15 as damages to wearing apparel caused by X-ray burns, and $100 on account of respondent's being unable to pursue her usual employment for a period of four weeks. The court further found that respondent would be subject to future expenditures for medical treatment by reason of the injuries inflicted upon her, the exact amount of which could not then be ascertained.

The verified complaint alleged that plaintiff employed the defendant to advise her with respect to an abscess on the right side of her chin due to an infected condition of her teeth, and that defendant placed her in charge of a servant in his employ, with directions that said employee take an X-ray photograph of the affected area; that in attempting to do so said employee so carelessly and negligently conducted herself and operated said X-ray machine that plaintiff became violently electrified, shocked and burned so as to cause her much pain and suffering, by reason of which she was rendered less efficient in the performance of the duties of a stenographer. The injuries specifically enumerated by plaintiff were first and second degree burns on the left side of her face; first and second degree burns on the left side of her chest and breast, and burns on the thigh and on the ring finger of the right hand and on the index finger of the left hand at the first joints of said enumerated fingers. It is alleged that said burns have left scars that have caused plaintiff great mental pain and anguish. ■ The physical pain caused by shock is also described, but as the amount of damages awarded is small, it becomes unnecessary to repeat the allegations of the complaint or the evidence adduced at the trial to rebut any claim that the judgment was the result of passion or prejudice.

■ The complaint was demurred to upon several special grounds. The deficiency of the complaint specially stressed by defendant is that the following allegation does not contain facts sufficient to constitute a statement of general damages, viz.: " . . . that said servant so carelessly, negligently and unskillfully conducted herself (as servant) in performing the operation of taking the X-ray picture that she caused the said plaintiff to become violently electrified, shocked, burned, bruised and .wounded, in that said plaintiff sustained first and second degree burns, . . . ," describing the extent of said burns. That the foregoing language is a sufficient allegation of general damages there can be no doubt. It is also equally certain that it is sufficient in cases of this class to plead that the thing done was negligently done. This question has been set at rest by a long line of decisions of this court. It was recently passed upon in *Dunn* v. *Dufficy*, 194 Cal. 383

[228 Pac. 1029], and further citations would be merely cumulative.

By his verified answer defendant positively denied that 'the respondent "placed herself in any manner or at all under the care of this defendant as a physician, or otherwise than for the purpose of procuring an X-ray picture of plaintiff's teeth"; denied that the defendant advised plaintiff to have an X-ray plate made of her jaw and alleged that she requested him to make such a plate. Defendant denied in positive terms that "the said or any burns had left marks or scars either visible or otherwise on plaintiff's anatomy at any place, or at all." The only physician who testified in the case described the burns plaintiff had received on the face and on one of her fingers as first degree burns, and those on her chest and right leg as second degree burns. Second degree burns are such as leave permanent scars, while first degree burns leave no permanent marks.

In its findings the court found, contrary to the physician's testimony, that the plaintiff sustained first and second degree burns on the left side of her face. It is objected that this finding as to second degree burns on the face is not supported by the evidence. If it had been, the small award of damages would not have been adequate to the injury suffered. There was testimony, however, that plaintiff did suffer second degree burns on other parts of her body and the shock, pain and mental suffering, as described by her and found upon by the court, were alone amply sufficient to support the judgment though she received no second degree burns on the face.

Appellant has devoted a great part of his argument to combating the application of the doctrine of *res ipsa loquitur* to malpractice cases. There is nothing in the record to indicate that the court decided the case by the application of the doctrine of *res ipsa loquitur* or was influenced by that doctrine in rendering its decision. The trial court simply held, and there was evidence in the record to sustain its finding, that the operator of the X-ray machine so "carelessly, negligently and unskillfully conducted herself in performing the operation of taking the said X-ray picture that she caused the plaintiff to become violently electrified, shocked. . . . " Appellant, upon examining respondent's teeth, placed her in charge

of the young lady who operated the X-ray machine, with directions that a radiograph be taken. She was then conducted by the operator to the X-ray machine room and placed in a recumbent position for the taking of the radiograph. The operator's version of what followed is that she instructed respondent to remain very quiet and forewarned her against becoming alarmed at the slight clicking noise which she would hear as soon as the X-ray mechanism was set in motion, and as she pulled the second switch respondent raised her knee so that it either came in contact with or was brought into very close proximity to the X-ray tube, which carries a high voltage of electric current, and that she next observed an electric spark flash from the lower part of the tube toward respondent's knee. Respondent then leaned forward and in an attempt to extricate herself from her peril wrapped herself around the tube, which extended at slight elevation over the body from the extremities to her face. It is admitted that when bodies are brought within certain given distances of said tubes electric sparks are arced, or jump from said tubes and produce burns and cause damage to bodies into which they are inducted. The operator admitted that she placed said highly charged electric tube not more than ten inches above the knees of respondent as she arranged her in the chair for the purpose of taking the picture.

Respondent, who had no technical knowledge as to the operation or mechanism of an X-ray machine, denied that the operator cautioned her against raising her knees or forewarned her as to the slight clicking noise that would be produced upon turning the switch and positively denied that she raised her knee or otherwise changed her position before she was shocked and burned by the electric flashes. A piece of her dress, which would rest normally upon her knee, was burned. Besides, she received burns on the left side of her face, chest, certain fingers of both hands and on the thigh. The primary cause of the burns and shock is more consistently explicable on the theory that the electric sparks were arced from the tube to the face or upper portion of the body, thereby causing the respondent, either in pain or in fright, to move her lower limbs in an attempt the throw the tube a safe distance from her body or to carry herself from the zone of danger, than on the theory

that the slight clicking sound, against which appellant claims respondent had been cautioned, so terrified her that she voluntarily elevated her knee to the extent of ten inches, thus bringing it in contact or near contact with the high voltage electric appliance. The claim of appellant that the first electric current to enter respondent's body was caused by her raising her knees approximately ten inches upon becoming startled at the slight clicking sound which followed the turning of the switch is not, in the light of the situation, consistent with human conduct and the trial court, no doubt, rejected appellant's version and gave credence to the respondent's account of her conduct up to the time that she received the first electric shock. If it be conceded, in the absence of any evidence sustaining such a concession, that the knee burn was the first received by respondent, that circumstance would not be sufficient to exculpate appellant of negligence. There is ground sufficient for holding that the tube was brought by the operator even closer to respondent's knee than she admitted bringing it. Appellant's witnesses admit that electric sparks would arc from the tube if it was brought within three and three-quarters inches of respondent's body. Indisputably sparks *did arc* and respondent testified that she did not move her body in any way as she sat in position for the operator to take the radiograph. It, therefore, follows that the electric burns which respondent received were the result of defendant's negligence.

Appellant has cited a number of cases to the effect that the doctrine of *res ipsa loquitur* is not applicable to malpractice cases brought against physicians, surgeons and dentists for errors of judgment committed in the treatment of disease. Such cases have no application whatsoever to the facts of the instant case. Appellant here was not engaged in employing an X-ray as a treatment for disease. He thus stoutly repudiates its use as a curative means in his answer: " . . . denies that plaintiff placed herself in any manner or at all under the care of this defendant as a physician, or otherwise, *than for the purpose of procuring an X-ray picture of plaintiff's teeth.*" (Italics supplied.) His contention now is that the *res ipsa loquitur* doctrine, as applied to physicians, should be extended to include X-ray operators. We are satisfied that the negli-

gence of appellant, as found by the trial court, is supported by the case as presented, and recourse to the doctrine of *res ipsa loquitur* is not necessary. If it were necessary, however, to invoke it, we would not hesitate to apply it to the facts described by the evidence in the instant case. (See discussion of application of rule to electrical devices, 10 Cal. Jur. 199, 200.) ▮ It may well be said here, as was said in *Phoenix Assur. Co.* v. *Texas Holding Co.*, 81 Cal. App. 61 [252 Pac. 1082], in applying the doctrine of *res ipsa loquitur* to the facts of a case not so typically illustrative of the reason of the rule as the instant case:

"We think this doctrine may be urged with more than plausibility. Everything in the present case which in any way contributed to the accident was under the management of the defendant, . . . and that in the ordinary course of things, the accident would not have happened if those having the management had used proper care." (Citing the cases of *Judson* v. *Giant Powder Co.*, 107 Cal. 549 [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020], *O'Connor* v. *Mennie,* 169 Cal. 217 [146 Pac. 674], and *Van Horn* v. *Pacific Refining etc. Co.,* 27 Cal. App. 105 [148 Pac. 951].)

In *Evans* v. *Clapp* (Mo. App.), 231 S. W. 79, the doctrine was applied in an action to recover for the negligent use of X-ray machines in taking radiographs, in the following language:

"It is manifest . . . that it cannot be said the jury could not reasonably find that plaintiff received an X-ray burn at the hands of the defendants, and that it was negligently administered. It is a dangerous agency, exceedingly capable of producing serious injury unless administered with care and caution. *State* v. *Lester,* 127 Minn. 282 [L. R. A. 1915D, 201, 149 N. W. 297]. As hereinbefore stated, the X-ray was not applied in this case for purposes of treatment, but merely to ascertain the cause of plaintiff's headaches, and this was disclosed at the first examination. There is no room, therefore, for the application of any theory of mere honest mistake in the careful application of a treatment intended to be applied in the accomplishment of a result similar to the one produced but not to the extent thereof.

"On the contrary, the X-ray was to be used only to discover a condition which was at once shown, and the many other exposures were not made in the interest of the patient but for other purposes. Examinations, when carefully and properly made, do not produce burns; hence when a burn is produced, this fact is of itself some evidence from which the jury may find that the degree of care and skill ordinarily exercised by persons of like profession and using such agencies was not exercised in that particular case. *George* v. *Shannon,* 92 Kan. 801, 808 [Ann. Cas. 1916B, 338, 142 Pac. 967]; *Shockley* v. *Tucker,* 127 Iowa, 456 [103 N. W. 360]. Of course, the rules governing the duty and liability of physicians and surgeons in the performance of professional services are applicable to them in the use and manipulation of an X-ray machine. 21 R. C. L. 386."

*Holt* v. *Ten Broeck,* 134 Minn. 458 [Ann. Cas. 1918E, 256, 159 N. W. 1073], and cases therein cited, hold to the same effect.

The doctrine of *respondeat superior* clearly renders the appellant civilly responsible for the negligence of his employee, the operator of the X-ray machine.

The judgment is affirmed.

Curtis, J., Preston, J., Richards, J., Shenk, J., Langdon, J., and Waste, C. J., concurred.