[Civ. No. 6374. First Appellate District, Division One.—April 18, 1929.]

IRENE K. BROWN, a Minor, etc., Respondent, v. EDMUND SHORTLIDGE, Appellant.

Ford, Johnson & Bourquin for Appellant.

Perry Evans and Harold L. Brown for Respondent.

PARKER, J., *pro tem.*—This is an appeal by defendant, a physician and surgeon, from a judgment entered against him in an action for damages alleged to have been sustained by plaintiff as a result of carelessness and negligence of the defendant in and about the performance of a minor surgical operation. · Plaintiff at the time of the operation was a child of the age of six years. Defendant, as a surgeon, had advised the necessity of the removal of the child's tonsils and adenoids, and pursuant to that advice the child was taken to a hospital for the operation. There is evidence that at the time appointed for the operation the surgeon was not present, but that shortly thereafter he came in, evidently in haste and at once began preparations for the work in hand. The child was removed to the operating room of the hospital, in which room were present the defendant, an anesthetist and two nurses. A general anesthetic was administered,

and upon the child relaxing a contrivance referred to as a gag was inserted in the mouth, the purpose of which was to hold the mouth open and control the tongue during the operation. About a minute or two after the gag was inserted the surgeon noticed blood on the lips of the child patient and upon examination he discovered a tooth lying loose in the mouth, completely free. It was disclosed upon subsequent examination that the bone in which the base of the tooth was set was fractured, which bone was described as being the bone in the superior maxillary. It was for the loss of the tooth that the trial court awarded plaintiff a money judgment. In passing it is noted that no complaint is made on the question of the amount of damages. The finding of the trial court is as follows: "Defendant did not use ordinary or reasonable care in his attention to the treatment of plaintiff in respect to the operation and the preparation of plaintiff therefor on said day, but then and there attended upon plaintiff and performed the said operation in a careless and negligent manner, in that defendant neglected and failed to apply or manipulate, or to cause to be applied or manipulated in a reasonable, careful or reasonably skillful manner, a certain gag placed by defendant in plaintiff's mouth as an instrument for facilitating said operation; and by reason of defendant's omission to use ordinary or reasonable care in the premises, one of plaintiff's upper central front teeth, commonly known as an incisor was forced out of its place in plaintiff's mouth." There is the further finding of the trial court as follows: The defendant's treatment of and attention given to plaintiff on the occasion and at the time of said operation was not standard or approved treatment or attention given by physicians and surgeons in the vicinity of San Francisco in such operations or in the preparation of the patient therefor; and the treatment and attention then and there given to plaintiff was not the best of defendant's ability or in the exercise of ordinarily or reasonably good judgment or without carelessness or negligence. If the evidence supports these findings the judgment must be affirmed. Supplementing the general statement of facts, there is ample evidence to warrant the following statement of facts. Defendant was a practicing physician and surgeon of the city of San Francisco, specializing in throat affection and oral surgery, and

the operation was performed in San Francisco. The child entered the operating room with the tooth in question perfectly sound and of normal placement and fixture. The tooth was a second tooth and firmly imbedded in the bone structure. A gag was inserted in the child's mouth, but prior to the insertions of the gag the patient had completely relaxed and was fully under the anesthetic. The defendant had been delayed in his arrival at the hospital and the operation was rushed along in a hurried manner. While some part of the introduction of the gag was done or performed by the anesthetist assisting, the defendant directed the proceeding and himself introduced and adjusted the gag. After the defendant had introduced the gag he assured himself that the adjustment was proper to protect the lips and that the upper teeth were free and as defendant states ''absolutely all right.'' The defendant then busied himself fixing the light and other paraphernalia incident to the operation and when he looked down he observed the blood on the patient's lips. The defendant testifies: ''It struck me in a flash that there must be something wrong with the teeth and then I looked down and saw the tooth lying there.'' There was evidence before the court that the tooth must have been either knocked out or extracted. There is not a word of testimony indicating that the anesthetist or anyone other than defendant, excepting jointly with the latter, ever touched the patient or the gag. Likewise there is not a word of direct testimony as to how the tooth was loosened and removed. Summing it up, we find a child patient completely under anesthetic in the hands of a skilled physician preparatory to an operation for the removal of tonsils. For no apparent reason and justified by no explanation the bone in the superior maxillary is fractured in front and a tooth is pulled or forced from the socket. The only attempt at explanation is the statement of a dental expert to the effect that in similar operations where a gag is used a surgeon would be lucky if at some time, something of that kind would not occur and in explanation of the statement he cites conditions, essentially different from the case at bar, under which such a casualty might occur. Defendant contends that the burden of proof being on the plaintiff it was necessary for him to affirmatively show some positive act of actionable negligence. It is his contention that the doctrine of *res ipsa loquitur* can

have no application. The case of *Vergeldt* v. *Hartzell,* 1
Fed. (2d) 635, is illuminating on the subject here involved.
Therein it is said, quoting from *Evans* v. *Roberts,* 172 Iowa,
653 [154 N. W. 923] : "It is appellant's contention that there
is no evidence in the record to support a finding that he was
negligent. With this we are unable to agree. Assuming
for the purposes of this case, the soundness of the argument
that, in performing an operation, a surgeon is not held to
guarantee results, and that, if he possesses the measure of
skill which the law requires, a mere failure of judgment in
his choice of methods and means, is not actionable negli-
gence, such concession is insufficient for the disposition of the
issue of negligence in this case as a matter of law. This is
not the ordinary case where a practitioner is sought to be
charged with liability for alleged improper treatment of some
bodily ailment or infirmity. He was employed to remove the
adenoids from the plaintiff's throat and there is neither
claim nor proof that he did not successfully remove them.
His negligence, if any, was in failing to take due care to
avoid injury to the undiseased parts in the vicinity of which
the operation was performed; and while it may be true that,
had the operation upon the adenoids been unsuccessful and
disappointing, no inference of negligence or want of skill
would arise therefrom, it does not follow that this rule applies
with the same force to an injury done by him to sound and
undiseased parts of plaintiff's person which he was not called
upon to treat and did not pretend to treat. If a surgeon,
undertaking to remove a tumor from a person's scalp, lets
his knife slip and cuts off his patient's ear, or if he under-
takes to stitch a wound on the patient's cheek and by an
awkward move thrusts his needle into the patient's eye, or
if a dentist in his haste, leaves a decayed tooth in the jaw
of his patient and removes one which is sound and service-
able, the charitable presumptions which ordinarily protect
the practitioner against legal blame where his treatment is
unsuccessful are not here available. It is a matter of com-
mon knowledge and observation that such things do not
ordinarily attend the service of one possessing ordinary skill
and experience in the delicate work of surgery. It does not
need scientific knowledge of training to understand that,
ordinarily speaking, such results are unnecessary and are
not to be anticipated if reasonable care be exercised by the

operator." In *Wharton* v. *Warner*, 75 Wash. 470 [135 Pac. 235], the Supreme Court of Washington says: "It is argued that whether a surgical operation was unskillfully performed is a question of science to be determined by the opinion and evidence of surgeons and that a bad result, standing alone, is no evidence of unskillful surgery. Both propositions are sound when soundly applied. The reason is that in most cases a layman can have no knowledge whether the proper medicine was administered or the proper surgical treatment given. Whether a surgical operation was unskillfully performed is a scientific question. If, however, a surgeon should lose the instrument with which he operates in the incision which he makes in his patient, it would seem as a matter of common sense that scientific opinion could throw little light on the subject." In the case of *Dimock* v. *Miller*, 202 Cal. 668 [262 Pac. 311], the full membership of the Supreme Court, as now constituted, speaking through Mr. Justice Langdon, says: "If it is necessary to demonstrate conclusively and beyond the possibility of a doubt that the negligence resulted in the injury, it would never be possible to recover in a case of negligence in the practice of a profession which is not an exact science." In *Michener* v. *Hutton*, 203 Cal. 604 [59 A. L. R. 480, 265 Pac. 238], it is said: "The courts of this state have long since adapted the rule as expressed in 1 Shearman & Redfield on Negligence, 6th ed., page 132, viz., 'Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care it affords reasonable evidence, in the absence of explanation by the defendant that the accident arose from want of proper care.' " In the very recent case of *Ragin* v. *Zimmerman*, decided March 25, 1929, and found in 206 Cal. 723 [276 Pac. 107], the Supreme Court strongly implies that when necessary the doctrine of *res ipsa loquitur* will be applied in cases of the kind. In that case the question involved the use of an X-ray machine, but the reasoning is equally applicable to the use of any mechanical equipment. The court cites with approval the following language of *Phoenix Co.* v. *Texas Co.*, 81 Cal. App. 61 [252 Pac. 1082], with reference to the doctrine of *res ipsa loquitur:* "We think the doctrine may be urged with more than

plausibility. Everything in the present case which in any way contributed to the accident was under the management of defendant . . . and that in the ordinary course of things the accident could not have happened if those having the management used proper care." The exact meaning of the term *res ipsa loquitur* follows its translation, namely, "the thing itself speaks," or as is the generally accepted reading, "the thing speaks for itself." The application of the doctrine has never been confined to any set formula of fact. If a patient should visit a surgeon for the purpose of having a mole removed from the right foot and awoke from an anesthetic minus his left arm it is certain that some satisfactory explanation would be required to stop the fact itself from broadly proclaiming the negligence of the surgeon. The difference between such a case and the case at bar is one of degree only. If the surgeon in the case at bar could stand upon some imaginary rule of law to the effect that when one submits himself to surgical treatment he may expect anything to happen, so likewise could the surgeon in the supposed case. We think the true rule is expressed in the cited cases, and the distinction made plain between cases involving the merits of a diagnosis and scientific treatment and cases where, during the performance of surgical or other skilled operations an ulterior act or omission occurs, the judgment of which does not require scientific opinion to throw light upon the subject. Counsel for appellant is fearful lest the affirmance of the judgment herein may set aside all of the well-known rules protecting physicians and surgeons in the practice of their profession and place upon them the burden of at all times demonstrating to a lay judge or jury the correctness of diagnosis made and treatments administered or means employed, thus making them, in all cases, insurers of a successful outcome. These fears are groundless. The affirmance will serve only to confine the rule within the limits intended, and while preserving to the surgeon all of the protection the law intended will also give to a helpless unconscious patient an assurance of the law's solicitude in his behalf.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 18, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 17, 1929.

All the Justices present concurred.