[Civ. No. 11363. Second Appellate District, Division One.—May 4, 1938.]

GARY JAMES THOMSEN, a Minor, etc., Appellant, v. SAMUEL BURGESON, Respondent.

Milan Medigovich and Ralph C. Curren for Appellant.

W. I. Gilbert for Respondent.

DORAN, J.—This is an appeal on behalf of plaintiff, a minor, by his mother and guardian *ad litem*, from a judgment in favor of defendant, a physician.

Plaintiff's complaint in the action, filed October 5, 1936, was in two counts: The first alleged malpractice of defendant in that, in July of 1934, during the performance of a tonsillectomy upon plaintiff (who at the time thereof was of the age of two years and eight months), defendant removed the uvula and a portion of the soft palate and injured the anterior and posterior pillars of plaintiff's throat; the second count was based upon trespass, alleging that defendant, without the consent of plaintiff or his parents, removed said uvula and portion of the soft palate. It is further alleged that since said operation and as a proximate and direct result thereof plaintiff is unable to swallow foods or liquids in a normal manner, doing so only with great difficulty, and is unable to properly and normally develop his speech.

The case was tried before the court with a jury. At the conclusion of plaintiff's case, the defendant rested without introducing any evidence, and thereupon made a motion for a directed verdict upon the ground, as respondent's counsel stated at the trial, that "there has been absolutely no medical testimony offered or expert testimony which condemns this treatment". The motion for a directed verdict was granted by the trial judge, and a verdict was returned accordingly against the plaintiff and in favor of defendant.

■ Appellant contends, in substance, that the court erred in sustaining objections to hypothetical questions asked of plaintiff's expert witness; that expert testimony was not essential to plaintiff's case; that the court erred in directing a verdict on plaintiff's first cause of action, which alleged malpractice; and that as to the second cause of action, a case of trespass was fully established and the issue should have been submitted to the jury.

Respondent contends, to the contrary, that "There is positively nothing in this case at bar of which the court could take judicial notice and there are no facts which may be ascertained by the ordinary use of the senses of a non-expert, because the question whether or not the uvula could be injured or partly removed in the course of a tonsillectomy is a question that can only be solved upon the criterion of the technique employed by the physician. Whether this technique conformed to the ordinary standard required by law of a physician is not a matter, however, which may be ascertained by the ordinary use of the senses of a non-expert."

Without going into further detail, it is sufficient to state that the evidence reveals a situation which clearly takes the case at bar out of that class of cases in connection with which expert testimony is indispensable. In *Brown* v. *Shortlidge*, 98 Cal. App. 352 [277 Pac. 134], the court quotes with approval from *Evans* v. *Roberts*, 172 Iowa, 653 [154 N. W. 923], which last-mentioned case is singularly applicable to a determination of the questions involved in the within appeal: " 'It is appellant's contention that there is no evidence in the record to support a finding that he was negligent. With this we are unable to agree. Assuming for the purposes of this case, the soundness of the argument that, in performing an operation, a surgeon is not held to guarantee results, and that, if he possesses the measure of skill which the law requires, a mere failure of judgment in his choice of methods and means, is not actionable negligence, such concession is insufficient for the disposition of the issue of negligence in this case as a matter of law. This is not the ordinary case where a practitioner is sought to be charged with liability for alleged improper treatment of some bodily ailment or infirmity. He was employed to remove the adenoids from the plaintiff's throat and there is neither claim nor proof that he did not successfully remove them. *His negligence, if any, was in*

*failing to take due care to avoid injury to the undiseased parts
in the vicinity of which the operation was performed;* and
while it may be true that, had the operation upon the adenoids
been unsuccessful and disappointing, no inference of negli-
gence or want of skill would arise therefrom, it does not
follow that this rule applies with the same force to an in-
jury done by him to sound and undiseased parts of plain-
tiff's person which he was not called upon to treat and
did not pretend to treat. If a surgeon, undertaking to re-
move a tumor from a person's scalp, lets his knife slip and
cuts off his patient's ear, or if he undertakes to stitch a
wound on the patient's cheek and by an awkward move
thrusts his needle into the patient's eye, or if a dentist in his
haste, leaves a decayed tooth in the jaw of his patient and
removes one which is sound and serviceable, the charitable
presumptions which ordinarily protect the practitioner
against legal blame where his treatment is unsuccessful are
not here available. It is a matter of common knowledge and
observation that such things do not ordinarily attend the ser-
vice of one possessing ordinary skill and experience in the
delicate work of surgery. It does not need scientific knowl-
edge or training to understand that, ordinarily speaking, such
results are unnecessary and are not to be anticipated if rea-
sonable care be exercised by the operator.' . . . The applica-
tion of the doctrine has never been confined to any set for-
mula of fact. If a patient should visit a surgeon for the
purpose of having a mole removed from the right foot and
awoke from an anesthetic minus his left arm it is certain
that some satisfactory explanation would be required to stop
the fact itself from broadly proclaiming the negligence of
the surgeon. The difference between such a case and the case
at bar is one of degree only. If the surgeon in the case at
bar could stand upon some imaginary rule of law to the
effect that when one submits himself to surgical treatment
he may expect anything to happen, so likewise could the sur-
geon in the supposed case. We think the true rule is ex-
pressed in the cited cases, and the distinction made plain
between cases involving the merits of a diagnosis and scien-
tific treatment and cases where, during the performance of
surgical or other skilled operations an ulterior act or omission
occurs, the judgment of which does not require scientific
opinion to throw light upon the subject.'' (Italics added.)

*Brown* v. *Shortlidge, supra,* is cited with approval in *Ales* v. *Ryan,* 8 Cal. (2d) 82, 95 [64 Pac. (2d) 409], wherein the the court declares, ''Where the thing is shown to be under the management of the defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care.'' (See, also, *Ragin* v. *Zimmerman,* 206 Cal. 723, 729 [276 Pac. 107]; *Nicholas* v. *Jacobson,* 113 Cal. App. 382, 385 [298 Pac. 505].)

The rule has been declared as follows: ''It is equally true that cases which depend upon knowledge of the scientific effect of medicine, or the result of surgery, must ordinarily be established by expert testimony of physicians and surgeons. This rule, however, applies only to such facts as are peculiarly within the knowledge of such professional experts and not to facts which may be ascertained by the ordinary use of the senses of a nonexpert.'' (*Barham* v. *Widing,* 210 Cal. 206, 214 [291 Pac. 173].)

So far as an understanding of the operation involved herein is concerned, it would appear to be a matter of common knowledge that the removal of a portion of the soft palate and of the uvula is no part of a tonsillectomy. ■ The location of the tonsils is a matter which is easily observable to anyone, and the location and function of the uvula and soft palate are matters of common knowledge, and of which the court can take judicial notice. Therefore, there was evidence in the record, at the time the motion for a directed verdict was granted, sufficient to support a verdict for plaintiff had such verdict been returned.

■ As the Supreme Court has declared, ''It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted only when, *disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence,* the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if

such a verdict were given. (Citing cases.) Unless it can be said as a matter of law that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury. (*Umsted* v. *Schofield Eng. Const. Co.*, 203 Cal. 224, 228 [263 Pac. 799].) A motion for a directed verdict 'is in the nature of a demurrer to the evidence, and is governed by practically the same rules, and concedes as true the evidence on behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom. Even though a court might be justified in granting a new trial it would not be justified in directing a verdict on the same evidence. The power of a court in passing upon such motions is strictly limited. It has no power to weigh the evidence, but is bound to view it in the most favorable light in support of the verdict. If, in the opinion of the court, the evidence is unreliable, it is its duty to grant a new trial, and it may grant such a trial even where there is substantial evidence to sustain the verdict, if it believes that the evidence preponderates against the verdict.' (*Hunt* v. *United Bank & Trust Co. of Cal.*, 210 Cal. 108 [291 Pac. 184].) In other words, the function of the trial court on a motion for a directed verdict is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict. *Although the trial court may weigh the evidence and judge of the credibility of the witnesses on a motion for a new trial, it may not do so on a motion for a directed verdict."* (*Estate of Flood*, 217 Cal. 763, 768 [21 Pac. (2d) 579]; see, also, *Collins* v. *Nelson*, 16 Cal. App. (2d) 535 [61 Pac. (2d) 479].)

In the light of the foregoing it was therefore error for the court to grant defendant's motion for a directed verdict.

A consideration of the other questions raised in the appeal is unnecessary.

For the foregoing reasons the judgment is reversed.

York, P. J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 25, 1938, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 1, 1938.