[Civ. No. 17585.   Second Dist., Div. One.   Oct. 19, 1950.]

LAURA R. NIELSEN, Respondent, v. F. L. MILLI-
GAN, M.D., Appellant.

Delvy T. Walton for Appellant.

Keslar, Woodward & Weissman and James T. Woodward
for Respondent.

DRAPEAU, J.—Because plaintiff was overweight, she con-
sulted defendant, a physician and surgeon, specializing in the

treatment of obesity. He explained his treatment: special capsules to be taken three times a day, and injections in either the arm or buttock of aqua solution of the pituitary gland. Defendant gave plaintiff her first injection on July 18, 1947, to wit: "I took the syringe with the needle attached from the sterilizer and then I sterilized the top of the 10 centimeter vial containing the solution of pituitary, pushed the needle through the rubber diaphragm, withdrew half a centimeter, sterilized the area on the buttock where the injection was to be given, gave the injection and then sterilized the area of the buttock again after the needle was withdrawn."

On Friday, July 25th, defendant gave plaintiff a week's supply of capsules and a second injection of the pituitary solution, proceeding "precisely the same as the first time she came."

As to this second treatment, plaintiff testified, however, that defendant picked up the needle from the table on which it was lying right beside the sterilizer and that he did not sterilize the punctured area on her hip after the injection. She further stated that after a few hours she had a burning sensation in her leg and discovered a red area as large as a cup surrounding the needle point of the injection. This was about 4 inches below the buttock. She tried without success to reach defendant by telephone that night and also the next day, Saturday, when a large water blister formed over an enlarged area. On Monday, she talked to defendant on the telephone regarding the condition of her leg, and was instructed by him to apply a solution of boric acid and to bathe the affected area in epsom salts. Defendant repeated this instruction on the following Wednesday and asked plaintiff to come to his office on Friday, August 1st.

By that time, plaintiff was walking with difficulty and took a taxi to defendant's office. He then examined her and found "an area of redness, approximately 3 centimeters across," in the general area of the injection of July 25th; that he "used the sterile needle with the syringe attached to test to see if there was any exacerbation there. There was none. That syringe came out dry." He then put on a borated gauze bandage and told plaintiff "if that bothered her any to put on an epsom salt compress and to keep in touch with me so I could give her adequate care." At this time he stated to plaintiff that he had experienced difficulty with three other patients who had suffered reaction as result of injections "from this vial" which contained the pituitary serum.

Thereafter, plaintiff's condition became progressively worse, and on August 4th, she consulted Dr. Milan S. Moore, who examined her and found that "she had an infection in the right hip"; that it showed redness, swelling and inflammation; that a cut more than half an inch deep and an inch and a half across was required to evacuate the pus; that it was a subsurface infection about one and one-half inches deep. Dr. Moore testified that he saw and treated plaintiff on August 4, 5, 6, 7, 8, 11, 13, 15, 19, 21 and 22; and that thereafter under his directions she took care of herself at home.

Dr. George J. Chais, a licensed physician and surgeon, duly qualified as an expert witness. In answer to a hypothetical question based upon the facts in evidence, he gave as his opinion that the defendant did not use the skill and care used by the average physician practicing in the community.

To the question: "Doctor, assuming that Dr. X, on the 25th day of July, 1947, made an injection of one-half cubic centimeter of the aqueous extract of the whole pituitary gland, in the right upper thigh of the patient, do you have an opinion as to whether Dr. X used the skill and care that the average surgeon and physician practicing in the vicinity of Los Angeles would have used? . . . The position being approximately 3½ to 4 inches below the buttock on the outer right thigh, which would place it approximately in this locality, Doctor, as testified to by the patient."—the witness answered: "That is not the accepted place to give an injection in the thigh. . . . That is considered too low for an injection into a gluteus."

The amended complaint alleged in substance that on July 25, 1947, defendant negligently and unskillfully treated and cared for plaintiff, "in that, among other things," he injected a defective serum into her right leg, using a needle that was not sterile, and thereby failed to use the skill and care that an average physician practicing in the community would have used; all of which resulted in serious injury and damage to the plaintiff.

The trial court found that defendant equipped his office "with nothing other than" a sterilizer, hypodermic needles, a bottle of pituitary extract, a bottle of alcohol, and gauze sponges; that he employed in the role of a nurse, an unskilled "office girl" whose services he used to assist in the treatment of plaintiff. Further, that subsequent to the treatment administered on July 25, 1947, "a deep and serious infection set in and spread rapidly and extensively over the thigh of the said plaintiff until it reached the condition where the plaintiff

became incapacitated. . . . that the patient, the plaintiff in this action, returned to defendant physician and exposed her condition to him, and that he took no adequate or competent steps, nor did he use the knowledge, skill and care used by physicians practicing the same profession in this community, but that he instructed her to apply simple remedies herself, which remedies were not competent to cure a serious infection; and . . . that defendant . . . had no means in his office, and took no steps to obtain means to stop the infection.''

The court also found that the pituitary solution was regularly used and supplied by a reputable pharmaceutical house; that defendant physician properly sterilized his needle and did not expose the same to contamination by placing it on the metal table. But that defendant ''did not use the ordinary knowledge, skill and care, nor did he provide himself with the reasonable means, to attend to and treat any unusual or extraordinary result that might follow the ordinary course of practice in the medical profession, nor did he, in the treatment of the plaintiff, use the knowledge, skill, and care established by physicians in this community. The Court finds that the injuries, both special and general, sustained by the plaintiff were proximately caused by the failure on the part of defendant to use the knowledge, skill, and care of physicians practicing in this community.''

Based on such findings, the court gave judgment in favor of plaintiff and denied defendant's motion for a new trial. Defendant appeals from such judgment.

It is here urged that the judgment is wholly unsupported by the evidence when considering (1) the charges of negligence as alleged in the amended complaint, and (2) the specific findings of the trial court thereon in favor of appellant. In other words, appellant states that the question for consideration is therefore ''whether there is any substantial evidence in the record to support the finding of lack of skill on the part of defendant physician and surgeon, in view of the specific finding that the serum was regularly used and supplied by a pharmaceutical house, not a party to the action, and was skillfully administered to the plaintiff by the use of a sterile needle.''

Quoting from the amended complaint, to which no demurrer was interposed, negligence of appellant was alleged as follows:

''That on or about the 25th day of July, 1947, . . . the defendants proceeded to treat plaintiff, but defendants and

each of them negligently, carelessly, recklessly and unskillfully treated and cared for plaintiff, in that, among other things, . . . defendants . . . injected a defective serum into the right leg of plaintiff and also used a needle which was not sterile in the making of said injection and . . . did thereby fail to use and exercise that degree of knowledge, skill, care and diligence in treating and caring for plaintiff that an average physician and surgeon practicing in the vicinity of the City of Los Angeles would have used; and that as a direct and proximate result thereof the plaintiff suffered serious injuries and damages as hereinafter alleged.''

It is clear that this allegation points not only to negligence in the treatment administered by appellant's using defective serum and a needle that was not sterile, but also to the negligent care accorded respondent during the course of treatments.

As stated in *Jackson* v. *Hardy,* 70 Cal.App.2d 6, 13 [160 P.2d 161], quoting from *Olcese* v. *Hardy,* 40 Cal.App. 323, 331 [180 P. 666] : '' 'Where general allegations of negligence are followed by an enumeration of specific acts, the plaintiff will not be limited to proof of specific acts unless the complaint clearly indicates the intention of the pleader to limit the negligence to such acts.' ''

In *Rannard* v. *Lockheed Aircraft Corp.,* 26 Cal.2d 149, 155 [157 P.2d 1], action for malpractice, the court stated: ''The absence of care in doing an act which produces injury to another is actionable. The term 'negligence' signifies and stands for the absence of care. . . . The same rule permitting the pleading of negligence in general terms has been applied in malpractice cases. (*Dunn* v. *Dufficy,* 194 Cal. 383 [228 P. 1029] ; *Ragin* v. *Zimmerman,* 206 Cal. 723 [276 P. 107] ; *McGehee* v. *Schiffman,* 4 Cal.App. 50 [87 P. 290].) That in such instances, in addition to general allegations of negligence, the complaint may include a recital of certain related particulars does not deflect from the force of the general rule that 'it is sufficient in cases of this class to plead that the thing was negligently done.' ''

The pleading here alleges negligence in general terms and the fact that there follows an enumeration of specific acts, i.e., the use of defective serum and a needle that was not sterile, does not alter the character of such allegation. Both of these specific acts may properly be classed as evidentiary facts, provable under the allegation of general negligence. (See *Jackson* v. *Hardy, supra.*) On the other hand, respondent is

not limited to proof of the specific acts alone, but under her allegation of negligence generally, she is entitled to prove appellant's lack of skill and his failure to accord proper care while he was administering the treatments.

The evidence with respect to the specific acts of negligence was conflicting. The trial court's findings thereon are conclusive upon this court. Nevertheless, the record discloses substantial evidence in support of the findings of appellant's negligence in failing to take adequate steps to check the infection when it first developed. Such findings amply support the judgment in respondent's favor.

Appellant claims that certain questions asked of him by the trial judge constituted prejudicial misconduct. Appellant was questioned with respect to the size and arrangement of the rooms of his office suite, articles of furniture and medical equipment contained therein. There appears to be no merit in this point. An examination of that part of the record objected to bears out opposing counsel's comment in the reply brief: "anyone at all acquainted with the trial Judge's methods knows that he is patient, kindly, deliberate, never hasty or intemperate, and cases tried before him proceed in the highest type of judicial atmosphere. Nowhere in his questioning can there be found any evidence of an inquisitorial attitude."

It is further urged that the award of $2,500 general damage is excessive. The record discloses that respondent was unable to work following the injection of July 25, 1947, for a period of at least four and one-half months. During this period she was subjected to discomfort, anxiety, pain and suffering. Her leg is scarred and misshapen.

As has been many times stated, "Upon appeal, the decision of the trial court and jury on the subject (of damages) cannot be set aside unless the verdict is 'so plainly and outrageously excessive as to suggest, at the first blush, passion, or prejudice or corruption on the part of the jury.' (Citation of cases.)" *McNulty* v. *Southern Pacific Co.*, 96 Cal.App.2d 841, 846 [216 P.2d 534]. There is nothing in the record before us which suggests either prejudice or corruption on the part of the trial court in making the award here complained of.

For the reasons stated, the judgment is affirmed.

White, P. J., and Doran, J., concurred.